IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAKISHA BRIGGS | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 2:13-cv-02191-ER |
| | : | |
| BOROUGH OF NORRISTOWN and DAVID R. | : | |
| FORREST, ROBERT H. GLISSON, RUSSELL J. | : | |
| BONO, WILLIE G. RICHET and JOSEPH E. | : | |
| JANUZELLI, in their individual and official capacities | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

AND NOW, this _____ day of _____, 2013, upon consideration of

Plaintiff Lakisha Briggs' Motion for Preliminary Injunction and any response thereto, IT IS

ORDERED that the Motion is GRANTED and Defendants are ENJOINED from enforcing

Norristown Municipal Council Ordinance 12-15 or former Section 245-3 of the Norristown

Municipal Code (the "Ordinances") against landlords or their tenants for any alleged "disorderly

behavior" at rental properties in Norristown or from requiring their employees to do so, and from

deeming any calls for police assistance to tenants' homes as a "strike" under the Ordinances,

until further Order of this Court.  No bond is required.

BY THE COURT:

_____

EDUARDO C. ROBRENO, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAKISHA BRIGGS                :

                                :      CIVIL ACTION

              Plaintiff,    :

                                  :

             v.                 :      NO. 2:13-cv-02191-ER

                                  :

BOROUGH OF NORRISTOWN and DAVID R.    :
FORREST, ROBERT H. GLISSON, RUSSELL J.    :
BONO, WILLIE G. RICHET and JOSEPH E.       :
JANUZELLI, in their individual and official capacities :

                                  :

            Defendants.    :

                                  :

## PLAINTIFF LAKISHA BRIGGS' MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Lakisha

Briggs, by and through undersigned counsel, hereby moves this Court to issue a preliminary

injunction prohibiting Defendants from enforcing Norristown Municipal Council Ordinance 12-

15 or former Section 245-3 of the Norristown Municipal Code (the "Ordinances") against

landlords or their tenants for any alleged "disorderly behavior" at rental properties in Norristown

or from requiring their employees to do so, and from deeming any calls for police assistance to

tenants' homes as a "strike" under the Ordinances.  In support hereof, Ms. Briggs incorporates by

reference the accompanying Memorandum of Law.

Dated:  April 25, 2013                     Respectfully submitted,


/s/ Sara J. Rose                           /s/ Peter M. Smith
Witold J. Walczak (PA 62976)            M. Duncan Grant (PA 21726)
Sara J. Rose (PA 204936)                 Peter M. Smith (PA 93630)
American Civil Liberties Foundation        Matthew E. Levine (PA 309419)
of Pennsylvania                       T. Stephen Jenkins (PA 311104)
313 Atwood Street                   PEPPER HAMILTON LLP

Pittsburgh, PA  15213
412.681-7864 (telephone)
412.681.8707 (facsimile)
vwalczak@aclupa.org
srose@aclupa.org

/s/ Sandra S. Park
Sandra S. Park
Lenora M. Lapidus
American Civil Liberties Union
Women's Rights Project
125 Broad St. 18th Fl.
New York, NY 10004
212.519.7871 (telephone)
212.549.2580 (facsimile)
spark@aclu.org
llapidus@aclu.org

*Attorneys for Plaintiff Lakisha Briggs*

3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
215.981.4000 (telephone)
215.981.4750 (facsimile)
grantm@pepperlaw.com
smithpm@pepperlaw.com
levinem@pepperlaw.com
jenkinst@pepperlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAKISHA BRIGGS | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 2:13-cv-02191-ER |
| | : | |
| BOROUGH OF NORRISTOWN and DAVID R. | : | |
| FORREST, ROBERT H. GLISSON, RUSSELL J. | : | |
| BONO, WILLIE G. RICHET and JOSEPH E. | : | |
| JANUZELLI, in their individual and official capacities | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF LAKISHA BRIGGS' MOTION FOR PRELIMINARY INJUNCTION

Dated: April 25, 2013

Respectfully submitted,

Witold J. Walczak (PA 62976)
Sara J. Rose (PA 204936)
American Civil Liberties Foundation
of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
412.681-7864 (telephone)
412.681.8707 (facsimile)
vwalczak@aclupa.org
srose@aclupa.org

Sandra S. Park
Lenora M. Lapidus
American Civil Liberties Union
Women's Rights Project
125 Broad St. 18th Fl.
New York, NY 10004
212.519.7871 (telephone)

M. Duncan Grant (PA 21726)
Peter M. Smith (PA 93630)
Matthew E. Levine (PA 309419)
T. Stephen Jenkins (PA 311104)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
215.981.4000 (telephone)
215.981.4750 (facsimile)
grantm@pepperlaw.com
smithpm@pepperlaw.com
levinem@pepperlaw.com
jenkinst@pepperlaw.com

212.549.2580 (facsimile)
spark@aclu.org
llapidus@aclu.org

*Attorneys for Plaintiff Lakisha Briggs*

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF FACTS .......................................................................... 5

  A.    The Old Ordinance......................................................................... 5

  B.    Episodes Of Domestic Violence .................................................. 6

    1.    Early Incidents .................................................................... 6

    2.    April 9, 2012 Incident ........................................................ 7

    3.    April 15, 2012 Incident ...................................................... 7

    4.    May 2, 2012 Incident .......................................................... 8

  C.    Meeting With Borough Officials .................................................. 9

  D.    June 23, 2012 Incident ................................................................. 10

  E.    Eviction Proceedings .................................................................... 11

    1.    First Eviction Hearing ........................................................ 12

    2.    Second Eviction Hearing – August 22, 2012 ..................... 12

  F.    Subsequent Attempts to Remove Ms. Briggs .............................. 12

  G.    Notice of Constitutional Violations Under the Old Ordinance.............................. 13

  H.    The New Ordinance ...................................................................... 14

  I.    The New Ordinance Continues to Violate Ms. Briggs' Constitutional Rights ......................... 17

  J.    The New Rental Property............................................................... 18

III.  ARGUMENT ............................................................................................. 19

  A.    Ms. Briggs Is Likely to Prevail on the Merits of Her First Amendment Claim. ....................... 20

    1.    The New Ordinance Violates Ms. Briggs' Right to Petition the Government for Redress of Grievances as Protected by the First Amendment to the United States Constitution.......................... 20

      (a)    Ms. Briggs Has a First Amendment Right to Seek the Assistance of Law Enforcement. ........................ 20

      (b)    The New Ordinance Creates an Undue Chilling Effect on Ms. Briggs' Constitutional Right to Seek Police Assistance. ....... 22

      (c)    The New Ordinance Cannot Withstand Strict Scrutiny. ............... 24

        (i)    The New Ordinance Does Not Serve a Compelling Government Interest......................... 25

(ii)     The New Ordinance Is Not Narrowly Tailored to
Achieve Any Purported Government Interest.................. 27

B.    Ms. Briggs' First Amendment Rights Will Be Irreparably Harmed Absent
Injunctive Relief................................................................................ 29

C.    Granting a Preliminary Injunction Against Enforcement of the New
Ordinance Will Not Result in Any Harm to Defendants. ..................... 31

D.    Granting a Preliminary Injunction Against Enforcement of the New
Ordinance Is in the Public Interest. ...................................................... 31

IV.    CONCLUSION............................................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Civil Liberties Union v. N.J. Election Law Enforcement Comm'n*, 509 F. Supp. 1123 (D.N.J. 1981)........................................................................................25

*Anderson v. Davila*, 125 F.3d 148 (3d Cir. 1997)........................................................30

*BE & K Constr. Co. v. NLRB*, 536 U.S. 516 (2002)......................................................21

*Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488 (2011)............................................21

*Builes v. Nye*, 239 F. Supp. 2d 518 (M.D. Pa. 2003)...................................................30

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)...........................21

*Circle Sch. v. Phillips*, 270 F. Supp. 2d 616 (E.D. Pa. 2003)......................................25

*Commonwealth of Pa. v. Pappert*, No. 1202 WDA 2008, slip op. (Pa. Super. Ct. Apr. 6, 2010)............................................................................................................29

*Curry v. State*, 811 So. 2d 736 (Fla. Dist. Ct. App. 2002)...........................................29

*Denver Area Educ. Telcoms. Consortium v. FCC*, 518 U.S. 727 (1996).....................28

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961)............21

*Elrod v. Burns*, 427 U.S. 347 (1976).........................................................................29

*Forro Precision, Inc. v. Int'l Bus. Machs.*, 673 F.2d 1045 (9th Cir. 1982).............21, 31

*Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963).........................25

*Guthrie v. Bradley*, Civ. Action No. 06-0619, 2008 U.S. Dist. LEXIS 72027 (W.D. Pa. Sept. 15, 2008).................................................................................................26, 28

*Meyer v. Bd. of County Comm'rs*, 482 F.3d 1232 (10th Cir. 2007).........................21, 26

*Meyer v. Grant*, 486 U.S. 414 (1988).........................................................................25

*Mich. Chamber of Commerce v. Land*, 725 F. Supp. 2d 665 (W.D. Mich. 2010)...........32

*In re Miles*, Chap. 13 Bankr. No. 90-12090S, 1992 Bankr. LEXIS 187 (E.D. Pa. 1992)............32

*Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978)..................................................19

*Oxford House-Evergreen v. Plainfield*, 769 F. Supp. 1329 (D.N.J. 1991)...............30, 31

**Page(s)**

*Presbytery of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454 (3d Cir. 1994) ..........30

*Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469 (E.D. Pa. 2007)............................................19

*Shelton v. Tucker*, 364 U.S. 479 (1960)........................................................................................27

*Spayd v. Ringing Rock Lodge*, 113 A. 70 (Pa. 1921)....................................................................21

*Tenants for Justice v. Hills*, 413 F. Supp. 389 (E.D. Pa. 1975) ....................................................31

*United Mine Workers v. Pennington*, 381 U.S. 657 (1965)..........................................................21

*United States v. Hylton*, 558 F. Supp. 872 (S.D. Tex. 1982) .......................................................22

*United States v. Lippman*, 369 F.3d 1039 (8th Cir. 2004), *cert. denied*, 543 U.S. 1080
(2005)......................................................................................................................................26

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000)........................................................................ passim

**OTHER AUTHORITIES**

Rule 65 of the Federal Rules of Civil Procedure ..........................................................................32

-iv-

## I.     INTRODUCTION

Plaintiff Lakisha Briggs ("Ms. Briggs") seeks a preliminary injunction to preclude Defendants from enforcing an unconstitutional ordinance that penalizes and compels her landlord to pursue her eviction for exercising her First Amendment right to petition the government for redress of grievances by calling the police to protect her from incidents of domestic violence or to report other criminal activity.[1]  Defendants' enforcement of this ordinance causes an undue chilling effect on Ms. Briggs' fundamental, constitutional right to seek police assistance.  Absent an injunction, Ms. Briggs' First Amendment rights will continue to be chilled.

Ms. Briggs is an African-American, female victim of repeated domestic violence, who has periodically needed to rely on the police for protection against domestic abuse at her rental home in Norristown, Pennsylvania.  Defendants – the Borough of Norristown ("Norristown" or "the borough"), its Former and Interim Municipal Administrator (David R. Forrest and Robert H. Glisson), Former and Interim Chief of Police (Russell J. Bono and Willie G. Richet), and Municipal Code Manager (Joseph E. Januzelli) – have enacted and enforced two ordinances that authorize them to penalize landlords in Norristown, and cause those landlords to remove their tenants from their homes, where the tenants have required the assistance of law enforcement for incidents of "disorderly behavior" at their rental properties, including for incidents of domestic violence.

---

[1] The instant Motion for Preliminary Injunction focuses on Defendants' violations of Ms. Briggs' right to petition as protected by the First Amendment to the United States Constitution.  As discussed in the accompanying Verified Complaint, Ms. Briggs also seeks injunctive relief to prevent Defendants' threatened enforcement of the New Ordinance under the Fourth and Fourteenth Amendments to the United States Constitution, their Pennsylvania constitutional equivalents, and federal and state statutory housing law.  For the sake of judicial economy, Ms. Briggs does not rely upon those additional bases for a preliminary injunction here.

For nearly four years through November 2012, Defendants maintained and enforced Section 245-3 of the Norristown Municipal Code (the "Old Ordinance") against landlords and tenants in Norristown.  The Old Ordinance authorized Defendants **to revoke or suspend a landlord's rental license and forcibly remove a tenant** from any property where the police have responded to three instances of "disorderly behavior" at the property within a four month period.  The Old Ordinance broadly defined "disorderly behavior" to cover any "activity that can be characterized as disorderly in nature" and provided several examples of activities that constituted "disorderly behavior," including instances of domestic violence.

Between April and September 2012, Defendants vigorously enforced the Old Ordinance against Ms. Briggs and her landlord by revoking her landlord's rental license and attempting to remove Ms. Briggs and her infant daughter from their home, on grounds that the police were called upon to protect her and her daughter from incidents of domestic violence too often.  In the course of enforcing the Old Ordinance, Defendants assigned three "strikes" to Ms. Briggs and placed her property on a 30-day probationary period.  During this probationary period, Ms. Briggs was so terrified she would lose her home due to Defendants' enforcement of the Old Ordinance that she refrained from calling the police during an incident in which she was brutally attacked and almost killed by her former boyfriend.

Notwithstanding this violent episode, Defendants proceeded undeterred to take steps to remove Ms. Briggs from her rental property until Plaintiff's counsel interceded.  In a September 2012 letter, Plaintiff's counsel explained to Defendants how enforcement of the Old Ordinance violated Ms. Briggs' constitutional rights and demanded that Defendants cease enforcement of the Old Ordinance against Ms. Briggs and other tenants in Norristown. Following a meeting with Plaintiff's counsel, Defendants acknowledged the constitutional

deficiencies of the Old Ordinance and subsequently repealed the Old Ordinance in its entirety, in November 2012. Yet, within two weeks after repealing the Old Ordinance, Defendants enacted a nearly identical, replacement ordinance (the "New Ordinance") in December 2012, without ever informing Plaintiff's counsel.

The New Ordinance is substantially similar to the Old Ordinance in all material respects. The New Ordinance permits Defendants *to assess a series of escalating criminal fines against landlords* of any property at which, within a four-month period, the police have responded to three instances of "disorderly behavior," including instances of domestic violence. While the New Ordinance changes the penalties on landlords for violations (from a suspension or revocation of rental licenses to a series of criminal fines), the New Ordinance has the same direct, adverse impact as the Old Ordinance on tenants in Norristown and continues to suffer from all of the same constitutional and legal failings. Although the nominal targets of the New Ordinance are landlords, the New Ordinance directly infringes on the constitutional rights of tenants in Norristown.

Specifically, Defendants' threatened enforcement of the New Ordinance violates the right to petition clause of the First Amendment to the United States Constitution, because it causes an undue chilling effect on Ms. Briggs' fundamental, constitutional right to seek police assistance. The supposed interests underlying the New Ordinance – decreasing the burden and expense on the Norristown police in having to respond to incidents of domestic violence and other "disorderly behavior" and encouraging Norristown citizens to curb such conduct – are not compelling, nor are they even served by the New Ordinance. The New Ordinance does nothing to reduce incidents of domestic violence; rather, it strips domestic violence victims of police protection, silences them from reporting acts of violence perpetrated against them, and

emboldens their abusers to perpetrate additional acts of violence in the home – with impunity. Perversely, the New Ordinance actually encourages a greater incidence of domestic violence in Norristown.

Unless Defendants are enjoined from enforcing the New Ordinance against Ms. Briggs and her landlord, she will continue to fear that calling the police for any reason will place her at risk of losing her home.  Absent injunctive relief, Ms. Briggs will continue to suffer irreparable harm to her First Amendment right to petition.  By contrast, granting injunctive relief will have no meaningful impact on Defendants.

Granting injunctive relief in this case will restore the First Amendment rights of Ms. Briggs and other victims of domestic violence in Norristown.  It will encourage them to speak up when they are being battered and to report incidents of domestic violence.  It will, thus, decrease the incidence of domestic violence and enhance the safety of domestic violence victims. Failure to grant an injunction would stifle their First Amendment rights and reinforce the message that victims of domestic violence in Norristown have repeatedly heard loud and clear from Defendants – keep incidents of domestic violence secret or we will have you evicted.

The Court should enjoin Defendants from enforcing the New Ordinance to ensure that Ms. Briggs' landlord is not penalized and, thus, encouraged to evict Ms. Briggs for reporting an incident of domestic violence or other criminal activity at her home.  The Court should issue an injunction before the next victim of domestic violence in Norristown is brutally attacked because she is too afraid to contact the police for help.

II.     **STATEMENT OF FACTS**

    A.     <u>**The Old Ordinance**</u>

       Between January 5, 2009 and November 7, 2012, Norristown maintained the Old Ordinance, which authorized Norristown's Municipal Administrator to revoke or suspend the rental license for any property where the police have responded to three instances of what the Chief of Police – in his sole discretion – considered "disorderly behavior" at the property within a four month period, including any "[d]omestic disturbances that do not require that a mandatory arrest be made."[2]   Compl. ¶ 39 (citing Section 245-3 of the Norristown Municipal Code, Exhibit A to the Compl.).   For each incident of "disorderly behavior," landlords and their tenants were assigned a "strike."   *Id.*

       While the Old Ordinance purported to provide two exceptions to its enforcement for calls seeking "emergency assistance," a plain reading of the relevant language reveals that these supposed "exceptions" were devoid of meaning.   Compl. ¶ 40.   First, the "exceptions" only exempted emergency calls made by "a tenant, a member of a tenant's family or a tenant's guest" and, thus, excluded calls for emergency assistance or otherwise by neighbors or any others outside the rental property.   *Id.*   Second, one of the "exceptions" did not apply if it was later determined, in the unilateral discretion of the Norristown Police Department, that any acts of "disorderly behavior" (as defined in the Old Ordinance) had occurred at the property.   *Id.*   Third, the other "exception" only excused such calls seeking "emergency assistance that is protected by Pennsylvania statute."[3]   *Id.*   The emptiness of these supposed "exceptions" was borne out by

---

    [2] Pennsylvania does not have a mandatory arrest provision in the law for domestic violence crimes.  The only mandatory arrest provision in the law relating to domestic violence is in the Protection from Abuse Act, 23 Pa. Cons. Stat. § 6113(a), which applies to specific violations of Protection from Abuse orders.

    [3] Plaintiff's counsel are not aware of any applicable Pennsylvania statutes.

Defendants' enforcement of the Old Ordinance against Ms. Briggs when the police were called to respond to emergency situations at her property and to protect her from incidents of domestic violence, as discussed below.   Compl. ¶ 41.

Although the nominal targets of the Old Ordinance were landlords, the Old Ordinance had several direct, adverse effects on Ms. Briggs and other victims of domestic violence in Norristown.  Compl. ¶ 43.  The Old Ordinance stripped domestic violence victims – some of the most vulnerable citizens in the community – of police protection, silenced them from reporting acts of violence against them, and emboldened their abusers to perpetrate their acts of violence in the home.  *Id.*  Under the Old Ordinance, victims of domestic violence were essentially forced to choose between eviction and calling for help when they were being battered in their homes.  *Id.*  The Old Ordinance also exacerbated the preexisting challenges that victims of domestic violence already face in accessing and maintaining housing.  *Id.*  It is well-documented that domestic violence is a primary cause of homelessness and housing instability for women and children.  *Id.*

### B.    Episodes Of Domestic Violence

Between November 1, 2010 and February 1, 2013, Ms. Briggs rented a house with a Section 8  voucher on Wayne Avenue in Norristown ("the Property") from her landlord, Darren Sudman ("Mr. Sudman").  Compl. ¶¶ 46-47.  While living at the Property, Ms. Briggs experienced several incidents of domestic violence in which the police were called.  Compl. ¶ 48.

### 1.    Early Incidents

Between January and March 2012, Ms. Briggs called the police four times for assistance with domestic disturbances.  Compl. ¶ 49.  The police responded to all four of these calls, but did not inform Ms. Briggs of the Old Ordinance and did not mention at that time whether the call would count as a strike.  Compl. ¶ 50.

###### 2.    April 9, 2012 Incident

On or about April 9, 2012, Ms. Briggs' boyfriend at the time, Wilbert Bennett ("Wilbert"), came to her home around 2:00 a.m. and tried to wake her up. Compl. ¶ 51. He was intoxicated. *Id.* Wilbert and Ms. Briggs began arguing, and Wilbert hit her. Compl. ¶ 52. Ms. Briggs' 21 year old daughter, who was at the Property at the time, called the police. Compl. ¶ 53. When the police arrived, they arrested Wilbert and charged him with disorderly conduct, public drunkenness, and possession of marijuana. *Id.*

The police did not charge Ms. Briggs with a crime, issue a citation or accuse her of any violation of law. Compl. ¶ 54. This was the first occasion that the police informed Ms. Briggs about the Old Ordinance and warned her that this incident of domestic violence was her first strike. Compl. ¶ 55. The police told her that they were charging her with a strike under the Old Ordinance because they were tired of responding to Ms. Briggs' previous calls to the police. *Id.* The police officer who told her about the Old Ordinance said: "You are on three strikes. We're gonna have your landlord evict you." Compl. ¶ 56.

Following this incident, Ms. Briggs had a lengthy discussion with members of her family and Wilbert regarding the Old Ordinance. Compl. ¶ 57. She told them that any "disorderly behavior" could get her evicted under the Old Ordinance. *Id.* She told them that it would be terrible if she got evicted and she needed to keep the rental house to raise her three year old daughter. *Id.*

###### 3.    April 15, 2012 Incident

Just six days later, on or about April 15, 2012, Wilbert and members of Ms. Briggs' family were at Ms. Briggs' home for a barbeque. Compl. ¶ 58. A fight arose between Wilbert and the boyfriend of Ms. Briggs' 21 year old daughter. Compl. ¶ 59. None of the

individuals from Ms. Briggs' home called the police for fear of incurring a second strike. Compl. ¶ 60.  Instead, a neighbor called the police.  Compl. ¶ 61.

Upon arrival, the police entered the house with guns drawn because it was reported – erroneously – that shots had been fired.  *Id.*  The police arrested Wilbert and Ms. Briggs' 21 year old daughter's boyfriend and charged them with simple assault and reckless endangerment.  Compl. ¶ 62.  The police officers did not mention the Old Ordinance or any strikes at that time.  Compl. ¶ 63.  However, Ms. Briggs' landlord later received a notice in the mail indicating that this incident constituted a second strike against Ms. Briggs.  Compl. ¶ 64.

Following the April 15 incident, Ms. Briggs broke up with Wilbert and told him that he could no longer stay at or even visit her home.  Compl. ¶ 66.  Ms. Briggs wanted everyone out of her home, except for her three year old daughter.  Compl. ¶ 67.  She did not want to do anything to risk losing her home.  *Id.*

### 4.    May 2, 2012 Incident

Two and a half weeks later, on or about May 2, 2012, Ms. Briggs returned home from work and saw Wilbert in an alleyway near her house, drinking and talking with some unknown individuals.  Compl. ¶ 68.  Wilbert chased Ms. Briggs down the alley with a brick and followed her to her house, where he attacked her.  Compl. ¶ 69.  An unknown person called the police.  Compl. ¶ 70  When the police arrived at her house, Wilbert ran into the house to hide from the police.  *Id.*  Ms. Briggs remained on the porch in only her bra; her shirt had been ripped off by Wilbert during the struggle.  Compl. ¶ 71.

Notwithstanding the obvious appearance of being assaulted, Ms. Briggs declined to tell the police what had happened and told them that there was no one in the house.  Compl. ¶ 72.  She was reluctant to tell the police the truth for fear that it could lead to a third strike under the Old Ordinance.  *Id.*  When the police asked if they should remove Wilbert from the house,

Ms. Briggs declined because she was worried about eviction under the Old Ordinance. Compl. ¶ 73. The police eventually entered the house and arrested Wilbert. Compl. ¶ 74. Wilbert was charged with public drunkenness, and both Ms. Briggs and Wilbert were cited for disorderly conduct and fighting. *Id*.

For each of the April 9, April 15, and May 2, 2012 incidents, the police charged Ms. Briggs with a strike under the Old Ordinance. Compl. ¶ 75. The borough then initiated license-revocation proceedings against Ms. Briggs' landlord. *Id*.

### C.   <u>Meeting With Borough Officials</u>

On or about May 23, 2012, Ms. Briggs accompanied her landlord, Mr. Sudman, to a meeting with borough officials, regarding whether Mr. Sudman's license for the property on Wayne Avenue should be suspended or revoked and whether Ms. Briggs could continue to live in the house. Compl. ¶ 76. In attendance at the meeting were Defendants Forrest, Bono, and Januzelli, and Norristown's Solicitor, Sean Kilkenny, Esq. Compl. ¶ 77. The meeting lasted approximately 30 minutes. Compl. ¶ 78. No official record, transcript or minutes were kept and no one appeared to be designated as a finder of fact. *Id*.

Defendant Bono did most of the talking at the meeting, reporting what was recorded in the police reports. Compl. ¶ 79. Ms. Briggs attempted to tell her side of the story and describe the incidents, but she was interrupted by Defendant Bono's statements that the police had responded to a call, and that one of the callers had claimed – erroneously – that shots had been fired at the house. Compl. ¶ 80. Defendant Bono also made specious allegations of drug-related activity at the house. *Id*.

Mr. Sudman also spoke at the meeting and described Ms. Briggs as a good tenant who paid her rent in a timely manner. Compl. ¶ 81. He explained that he had never had a problem with Ms. Briggs. *Id*. Mr. Sudman added that it would be a significant loss for him to

lose Ms. Briggs as a tenant and noted that it would be an even greater loss for Ms. Briggs to lose

her home because she had a three year old child to care for.  Compl. ¶ 82.  Ms. Briggs brought a

friend, Dana Henderson, to support her at the meeting, but Ms. Henderson was not permitted to

speak.  Compl. ¶ 83.

Later the same day, Defendant Forrest issued a letter decision and placed the

property on a 30-day probationary period.  Compl. ¶ 84.  Defendant Forrest declared in his letter

decision that any further violations during the 30-day period would result in suspension or

revocation of the rental license.  Compl. ¶ 85.  Thus, through this letter as well as their previous

communications, Defendants affirmatively instructed Ms. Briggs that any future calls to the

police would lead to her eviction.  Compl. ¶ 86.

   **D.**    **June 23, 2012 Incident**

Wilbert was incarcerated for a brief period of time as a result of the May 2nd

incident.  Compl. ¶ 87.  However, Wilbert was released from prison around the middle of June

2012 and went to find Ms. Briggs at her house.  Compl. ¶ 88.  Wilbert wanted to get back

together.  Compl. ¶ 89.  He threatened Ms. Briggs:  "You are going to be with me or you are

going to be with no one."  *Id.*

Ms. Briggs told Wilbert that she did not want to be with him anymore, but

Wilbert would not accept her decision and refused to leave.  Compl. ¶ 90.  Ms. Briggs could not

physically force him by herself to leave and knew that she could not call on the police to remove

him without violating the probationary period and facing eviction under the Old Ordinance.

Compl. ¶ 91.  Left powerless, Ms. Briggs acquiesced to Wilbert's demands.  Compl. ¶ 92.  She

let her abuser stay because she felt intimidated and worried that he would harm her or her three

year old daughter if she tried to do anything to force him out, and she knew that she could not

call the police for help without risking eviction.  *Id.*

On or about the evening of June 23, 2012, Wilbert invited some of his friends over to Ms. Briggs' house.  Compl. ¶ 93.  Powerless to prevent Wilbert's and his friends' intrusion without calling the police, Ms. Briggs let them stay.  Compl. ¶ 94.  She could not call the police without violating the Old Ordinance.  *Id.*

Later that evening, Wilbert attacked Ms. Briggs for allegedly flirting with other men.  Compl. ¶ 95.  He bit and tore her lip.  Compl. ¶ 96.  He broke a glass ashtray against the right side of her head, knocking her down and leaving a two-inch gash.  Compl. ¶ 97.  He stabbed her in the neck with one of the large broken glass shards.  Compl. ¶ 98.  Ms. Briggs ultimately passed out, with blood gushing from a four inch long puncture wound in her neck.  Compl. ¶ 99.

Ms. Briggs did not call the police for fear of triggering eviction under the Old Ordinance; a neighbor called the police.  Compl. ¶ 100.  Ms. Briggs was quickly flown by trauma helicopter to the University of Pennsylvania Hospital for emergency medical care.  Compl. ¶ 101.  Wilbert later turned himself in to authorities and was held on aggravated assault charges.  Compl. ¶ 102.  Ms. Briggs subsequently obtained a Protection from Abuse ("PFA") restraining order against Wilbert on July 12, 2012, which expires on July 11, 2015.  Compl. ¶ 103.

E.    **Eviction Proceedings**

Three days after the stabbing incident, on or about June 26, 2012, Defendant Forrest told Mr. Sudman that his rental license was revoked and that Ms. Briggs had ten days to vacate the property.  Compl. ¶ 104.  However, Defendant Forrest told Mr. Sudman that he could apply for a new rental license as soon as Ms. Briggs vacated the property.  *Id.* (citing June 26, 2012 email chain, Exhibit D to the Compl.).  *Id.*

-11-

Ms. Briggs had just returned home from the hospital after being treated for the stabbing incident. Compl. ¶ 105. It was the middle of her pay period and she did not have the money to go anywhere else. *Id.* Mr. Sudman told Ms. Briggs that the borough was, unfortunately, forcing him to file for her eviction. Compl. ¶ 106.

### 1.    First Eviction Hearing

Ms. Briggs, her attorney Susan Strong, Esq., and Mr. Sudman attended the first eviction hearing before Magisterial District Justice Margaret Hunsicker. Compl. ¶ 107. Mr. Sudman told District Justice Hunsicker that he did not want to evict Ms. Briggs because she was a good tenant who paid her rent in a timely fashion, and was bringing the eviction action solely because he was required to do so by the borough. Compl. ¶ 108. The Court issued a continuance and postponed its decision to give the borough some time to reconsider its decision. Compl. ¶ 109. Susan Strong communicated what had transpired at the eviction hearings to the borough. Compl. ¶ 110.

### 2.    Second Eviction Hearing – August 22, 2012

At the second eviction hearing, on or about August 22, 2012, District Justice Hunsicker ruled that Ms. Briggs could continue to live at the rental house if she paid her rent up through the end of August and Mr. Sudman's court filing fees relating to the eviction proceedings. Compl. ¶ 111. Ms. Briggs promptly paid the required amounts and was, therefore, entitled to remain in the property. Compl. ¶ 112. Susan Strong communicated the outcome of the hearing to Mr. Sudman and the borough. Compl. ¶ 113.

### F.    Subsequent Attempts to Remove Ms. Briggs

Despite District Justice Hunsicker's ruling, the borough continued to pursue the removal of Ms. Briggs from her home. Compl. ¶ 114. On or about August 27, 2012, Defendant Forrest told Mr. Sudman that – based on advice of counsel and notwithstanding the U.S.

Constitution, applicable federal law and District Justice Hunsicker's decision – the borough had

an "independent right" under the Old Ordinance to revoke his rental license, condemn the

property as "unlawful," and remove Ms. Briggs for trespassing.  Compl. ¶ 115.  Accordingly, the

borough strongly recommended that Mr. Sudman encourage Ms. Briggs to vacate the property

voluntarily.  *Id.* (citing August 27, 2012 email from D. Forrest to D. Sudman, Exhibit E to the

Compl.).

### G.    Notice of Constitutional Violations Under the Old Ordinance

Ms. Briggs, through her undersigned counsel, sent Defendants a letter on

September 10, 2012 notifying Defendants of the unconstitutionality of Defendants' actions under

the Old Ordinance and demanding that Defendants cease enforcement of the Old Ordinance

against Ms. Briggs and other tenants in Norristown.  Compl. ¶ 116 (citing September 10, 2012

letter, Exhibit F to the Compl.).  The September 10, 2012 letter also outlined the numerous

constitutional problems associated with enforcement of the Old Ordinance and pointed out that

the Old Ordinance violated the First, Fourth, Fifth, and Fourteenth Amendments to the U.S.

Constitution and their Pennsylvania equivalents, as well as federal and state statutory law.

Compl. ¶ 117.

Plaintiff's counsel later met with Defendants and Defendants' counsel on

September 19, 2012 to discuss the constitutional concerns described in the September 10, 2012

letter.  Compl. ¶ 118.  At this meeting, Defendants appeared to acknowledge the constitutional

failings of the Old Ordinance.  Compl. ¶ 119.  Following this meeting, Defendants agreed to five

demands by Plaintiff's counsel, including a repeal of the Old Ordinance:

   a.   First, Norristown agreed to cease any enforcement activities against Ms. Briggs under the
        Old Ordinance.  Ms. Briggs would be free to call the Norristown Police Department
        without fear of eviction.  Ms. Briggs would also not risk a strike or eviction if a neighbor
        or another person called the Norristown Police Department concerning Ms. Briggs'

property.  Compl. ¶ 120(a) (citing October 25, 2012 email chain, Exhibit G to the Compl.).

b. Second, Norristown agreed to cease any enforcement activities against Ms. Briggs' landlord, Darren Sudman, under the Old Ordinance.  Norristown would restore Mr. Sudman's rental license in full.  Compl. ¶ 120(b).

c. Third, Norristown agreed to suspend any enforcement of the Old Ordinance against any individuals (landlords or tenants) pending re-evaluation of the Old Ordinance by the Norristown Municipal Council.  Compl. ¶ 120(c).

d. Fourth, Norristown agreed to restore, where possible, the pre-enforcement positions of recently affected individuals (landlords or tenants).  Compl. ¶ 120(d).

e. Fifth, Norristown agreed to take steps to repeal the Old Ordinance in its entirety.  Compl. ¶ 120(e).

Plaintiff's counsel subsequently attempted to memorialize an agreement on these points with Defendants on October 25, 2012 in a written settlement agreement.  Compl. ¶ 121.  However, Defendants, through their counsel, rejected Plaintiff's counsel's proposed settlement agreement and refused to enter into any written settlement agreement.  Compl. ¶ 122.  Defendants subsequently repealed the Old Ordinance on November 7, 2012 by enacting Ordinance No. 12-11.  Compl. ¶ 123.  In enacting Ordinance No. 12-11, the Norristown Municipal Council gave two reasons for repealing the Old Ordinance.  First, the Old Ordinance resulted "in the deprivation of property rights for tenants without due process in violation of the 5th and 14th Amendments to the U.S. Constitution and other federal and state statutes."  Compl. ¶ 124 (citing Ordinance No. 12-11, Exhibit H to the Compl.).  Second, a repeal of the Old Ordinance was "in the best interests of protecting the rights of the residents of Norristown."  *Id.*

H.    **The New Ordinance**

Notwithstanding Norristown's admissions above in repealing the Old Ordinance, Defendants immediately began the process for introducing a proposed ordinance to re-enact the Old Ordinance in a "new" form.  Compl. ¶ 125.  On November 20, 2012, at the very next

-14-

meeting of the Norristown Municipal Council following the repeal of the Old Ordinance, the

Norristown Municipal Council introduced a proposed ordinance, "amending the 3-strikes

ordinance."  Compl. ¶ 126 (citing November 20, 2012 Municipal Council minutes, Exhibit I to

the Compl.).  Defendants did not notify Ms. Briggs or Plaintiff's counsel of the process or their

plan to enact this new ordinance immediately following the repeal of the Old Ordinance.  Compl.

¶ 127.

   At the following meeting of the Norristown Municipal Council on December 4,

2012, Defendants enacted Ordinance No. 12-15 (the "New Ordinance"), to replace former

Section 245-3 of the Norristown Municipal Code.  Compl. ¶ 128 (citing Ordinance No. 12-15,

Exhibit J to the Compl.).  The New Ordinance permits Norristown's Municipal Administrator to

assess a series of daily, escalating criminal fines against landlords of any property where the

police have responded to three instances of what the Chief of Police – in his sole discretion –

considers "disorderly behavior" at the property within a four month period, including any

"[d]omestic disturbances that do not require that a mandatory arrest be made."[4]  Compl. ¶ 129.

   The New Ordinance is substantially similar to the Old Ordinance in its direct,

adverse impact on tenants in Norristown and is plagued by the same constitutional and legal

deficiencies.  Compl. ¶ 130 (citing Blackline Comparison of the Old Ordinance and the New

Ordinance, Exhibit K to the Compl.).  Whereas the Old Ordinance permitted Norristown to

revoke or suspend a landlord's rental license, the New Ordinance allows Norristown to impose

criminal fines on landlords for the alleged "disorderly behavior" of a landlord's tenants.  Compl.

¶ 131.

---

[4] Again, Pennsylvania does not have a mandatory arrest provision in the law for domestic violence crimes.

Like its predecessor, the New Ordinance:  (a) gives the Chief of Police the authority and unfettered discretion to determine what "disorderly behavior" is and whether a landlord's tenants or guests have engaged in such "disorderly behavior"; (b) broadly defines "disorderly behavior" as conduct that "involves activity that can be characterized as disorderly in nature," including "[d]omestic disturbances that do not require that a mandatory arrest be made"; (c) imposes a penalty on landlords where three instances of "disorderly behavior" have occurred at a property within a four month period; and (d) provides a hollow exception for calls seeking "emergency assistance."  Compl. ¶ 132.

Unlike its predecessor, however, the New Ordinance goes further to penalize landlords and adversely impact tenants by: (i) encouraging landlords to "include in their leases language that provides that it is a breach of the lease for a tenant to be convicted for disorderly behavior"; and (ii) subjecting landlords to criminal penalties according to a graduating series of fines for each instance of "disorderly behavior" that occurs at a landlord's rental property, where "[e]ach day that a violation continues [] constitute[s] a separate offense."  Compl. ¶ 133.

Although the fifth recital of the New Ordinance states that the "Municipal Council desires that no . . . landlord [shall be] criminally responsible for the acts of their tenants," subsections D, E, and K expressly provide that a landlord shall be subject to criminal fines up to $1,000 per day for each incident of "disorderly behavior" of their tenants.  Compl. ¶ 134 (citing Ordinance No. 12-15, Exhibit J to the Compl.).  Although subsection H of the New Ordinance provides that "[n]o tenant shall be evicted or forced to vacate a rental dwelling unit by the Municipality of Norristown for violation of the provisions of Ordinance," subsection F expressly provides that "adverse action may be taken [against a landlord] when the [landlord] fails to diligently pursue the eviction process."  Compl. ¶ 135.  Similarly, subsection I states that "[i]t is

-16-

strongly encouraged that all [landlords] include in their leases language that provides that it is a breach of the lease for a tenant to be convicted for disorderly behavior."[5]  *Id.*

Notwithstanding the shift from suspending or revoking landlords' rental licenses to imposing criminal fines on landlords, the New Ordinance continues to suffer from the same constitutional and legal failings as its predecessor.  Compl. ¶ 136.  Defendants have attempted to sidestep the constitutional concerns of the Old Ordinance by drafting the New Ordinance in a way that:  (a) penalizes landlords with criminal fines for the alleged "disorderly behavior" of their tenants, instead of revoking or suspending their rental licenses; and (b) expresses Norristown's disinterest in evicting tenants but establishes a system by which landlords are obligated to take actions that Defendants have admitted would be unconstitutional if taken by them.  Compl. ¶ 137.  Such cosmetic alterations do nothing to rescue the New Ordinance from the same constitutional and legal failings that plagued the Old Ordinance.  Compl. ¶ 138.

## I.    The New Ordinance Continues to Violate Ms. Briggs' Constitutional Rights

Ms. Briggs continues to fear that contacting the police for any reason will once again place her at risk of losing her home, even when she calls the police to protect her physical safety.  Compl. ¶ 139.  This fear was exacerbated when, on December 7, 2012, only a few days after the New Ordinance was enacted, Ms. Briggs learned that Norristown would be inspecting her home at the Property, without her consent, on December 11, 2012 as part of Norristown's new program of "random inspections" of rental units throughout the borough.[6]  Compl. ¶ 140.

---

[5] Although this language uses the word "conviction" in this context, there is no requirement that criminal charges be filed against a tenant or anyone else for the tenant to incur a "strike" under the New Ordinance.  All that is required under the New Ordinance is that the Chief of Police determine, in his sole discretion, that the behavior at the rental property be "disorderly."

[6] Plaintiff's counsel are not aware of any ordinance authorizing such a program of "random inspections" of rental units throughout the borough.

On information and belief, the proposed inspection of Ms. Briggs' home was not random; rather, Norristown officials had affirmatively selected her home for inspection. Compl. ¶ 141. Plaintiff's counsel sent Defendants' counsel a December 8, 2012 email objecting to and challenging the legality of Norristown's planned inspection of Ms. Briggs' home. Compl. ¶ 142 (citing December 10, 2012 email chain, Exhibit L to the Compl.). While Defendants have since agreed not to inspect Ms. Briggs' home without her consent, they have not indicated any agreement that they will not seek to do so in the future. Compl. ¶ 143.

J.    **The New Rental Property**

On February 1, 2013, Ms. Briggs and her three year old daughter moved from the Property to another location in Norristown, where she rents a house with a Section 8 voucher. Compl. ¶ 144. Even at her new home, Ms. Briggs continues to fear that contacting the police for any reason may place her at risk of losing her home. Compl. ¶ 146. For example, on or about April 5, 2013, Ms. Briggs heard gun shots in her neighborhood and saw the gunman run through her backyard. Compl ¶ 147. She did not call the police to report this information for fear that it could lead to her eviction. *Id.*

Defendants have not advised Ms. Briggs or her new landlord that Defendants consider the New Ordinance invalid or illegal, or that it will not be applied against them. Compl. ¶ 148. Defendants' enforcement of the Old Ordinance against Ms. Briggs, their feigned repeal of the Old Ordinance, and their actions in enacting the New Ordinance continue to cause an undue chilling effect on the exercise of Ms. Briggs' free speech rights and her ability to seek the assistance of law enforcement. Compl. ¶ 149.

### III.    ARGUMENT

Each of the four preliminary injunction factors weighs heavily in favor of enjoining Defendants from enforcing the New Ordinance against Ms. Briggs or her landlord.  *See generally Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469, 477-78 (E.D. Pa. 2007) (discussing "four factors in determining whether to grant a preliminary injunction") (Robreno, J.); *see also Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.").

Ms. Briggs is likely to succeed on the merits of her First Amendment claim because Defendants' enactment and threatened enforcement of the New Ordinance unconstitutionally chills Ms. Briggs' right to petition the government for redress of grievances, by seeking police assistance for protection against incidents of domestic violence or by reporting other criminal activity.  Absent injunctive relief, Ms. Briggs will continue to suffer irreparable harm to her fundamental, First Amendment right to seek the assistance of law enforcement and to report criminal activity, and may suffer further harm to her physical safety.  By contrast, Defendants will suffer no meaningful harm, if a preliminary injunction is granted.  At most, Defendants will be obligated to respond to increased calls from its citizens to the police to protect them from harm or to report criminal activity.

Granting an injunction in this case will unquestionably serve the public interest. It will free Ms. Briggs and other tenants in Norristown to exercise their First Amendment right to report incidents of domestic violence.  It will reduce the incidence of domestic violence, enhance the safety of domestic violence victims, and decrease homelessness in Norristown.  Failure to

-19-

grant an injunction would send a scary message to tenants in Norristown: reporting incidents of domestic violence will get you evicted.

The New Ordinance should be enjoined to ensure: (a) that Ms. Briggs and her landlord are not penalized if she reports an incident of domestic violence to the police; and (b) that Ms. Briggs and her three year old daughter are not evicted from their home for exercising their First Amendment rights.

**A.      Ms. Briggs Is Likely to Prevail on the Merits of Her First Amendment Claim.**

      **1.      The New Ordinance Violates Ms. Briggs' Right to Petition the Government for Redress of Grievances as Protected by the First Amendment to the United States Constitution.**

Defendants' enactment and threatened enforcement of the New Ordinance unconstitutionally chills Ms. Briggs' right to seek police assistance under the First Amendment and cannot withstand judicial scrutiny.

      **(a)      Ms. Briggs Has a First Amendment Right to Seek the Assistance of Law Enforcement.**

Like the freedoms of speech and religion, the right to petition the government for redress of grievances is fiercely protected under the First Amendment of the United States Constitution (applicable to the states and their municipalities through the Fourteenth Amendment) and its Pennsylvania equivalent. *See, e.g., BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002) (holding the right to petition is "one of the most precious of the liberties safeguarded by the Bill of Rights"); *Spayd v. Ringing Rock Lodge*, 113 A. 70, 72 (Pa. 1921) (holding that the rights protected by the Pennsylvania equivalent of the First Amendment are so fundamental that they "cannot lawfully be infringed, even momentarily . . . by the State itself").

Calls to the police to report incidents of criminal activity constitute legitimate exercises of the First Amendment right to petition.  *See, e.g., Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2498 (2011) (holding that the right to petition is "not limited to petitions lodged under formal procedures"); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 133, 139 (1961) (holding that, absent illegal purposes, a state actor may not penalize a person for exercising his/her right to petition the government and influence law enforcement authorities); *see also United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965) (holding that a person may not be held liable for "a concerted effort to influence public officials regardless of intent or purpose"); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (holding that the First Amendment right to petition is not limited to just influencing the legislative process but extends to every governmental body); *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (holding the right to petition "applies equally in all contexts").

Accordingly, each call Ms. Briggs makes or that others make on her behalf to the police truthfully reporting incidents of domestic violence, "disorderly behavior" or any other criminal activity is protected by the First Amendment's right to petition clause.  *See, e.g., Meyer v. Bd. of County Comm'rs*, 482 F.3d 1232, 1243 (10th Cir. 2007) (holding that reporting physical assault, reporting a danger of a commission of crime, and filing a complaint with law enforcement are protected under the First Amendment); *Forro Precision, Inc. v.  Int'l Bus. Machs.*, 673 F.2d 1045, 1060 (9th Cir. 1982) (holding that the right to petition is integral to law enforcement's ability to enforce the laws of the United States); *United States v. Hylton*, 558 F. Supp. 872, 874 (S.D. Tex. 1982) ("There can be no doubt that the filing of a legitimate criminal complaint with local law enforcement officials constitutes an exercise of the first amendment right.").

> **(b)** **The New Ordinance Creates an Undue Chilling Effect on Ms. Briggs' Constitutional Right to Seek Police Assistance.**

Even though the New Ordinance purports to penalize only landlords in Norristown, the New Ordinance directly and unduly chills Ms. Briggs' First Amendment right to seek the protection of law enforcement.  Like its predecessor, the New Ordinance threatens to penalize Ms. Briggs' landlord if the police respond to three instances of "disorderly behavior," including incidents of domestic violence, at her rental home within a four month period.  *See* Compl. ¶¶ 130-32 (citing Blackline Comparison of the Old Ordinance and the New Ordinance, Exhibit K to the Compl.).  Indeed, the New Ordinance authorizes Norristown to impose a series of escalating criminal fines against her landlord where the police respond to incidents of domestic violence or other "disorderly behavior" at her home.  *See id.*  The New Ordinance goes even further than its predecessor to coerce Ms. Briggs' landlord to pursue her prompt eviction for any such instances of "disorderly behavior" by:  (1) encouraging Ms. Briggs' landlord to include in her lease "language that provides that it is a breach of the lease for [Ms. Briggs] to be convicted of disorderly behavior"; and (2) providing that "adverse action" may be taken against her landlord if her landlord "fails to diligently pursue the eviction process."  *See* Compl. ¶¶ 133-35 (citing Blackline Comparison of the Old Ordinance and the New Ordinance, Exhibit K to the Compl.).  Thus, Ms. Briggs reasonably fears that contacting the police for any reason will trigger a "strike" under the New Ordinance and may place her at risk of eviction, even when she calls the police to protect her physical safety from domestic abuse or any other danger.  *See* Compl. ¶ 139; *White*, 227 F.3d at 1241 (holding that a state actor chills an individual's exercise of First Amendment rights if the state actors' actions "would have chilled or silenced a person of ordinary firmness from future First Amendment activities").

-22-

This fear is real and palpable. Defendants doggedly pursued enforcement of the Old Ordinance against Mr. Briggs and her landlord for repeated calls to the police for incidents of domestic violence at her property between April and September 2012. *See* Compl. ¶¶ 51-115. The Norristown police told Ms. Briggs on at least two occasions that future calls to the police would lead to her eviction. *See* Compl. ¶¶ 56, 86. After receiving her first "strike" and, thus, learning of the Old Ordinance, Ms. Briggs was terrified to call the police for any reason, even when she was being physically abused by her former boyfriend – she was too afraid of triggering her eviction. *See* Compl. ¶¶ 57, 60 & 72-73. Ms. Briggs could not remove her abuser from her home because she could not force him out by herself and knew that she could not call on the police to remove him without violating her probationary status under the Old Ordinance and facing eviction. *See* Compl. ¶ 91. Left powerless against his aggression, she quietly endured her former boyfriend's repeated physical abuse. *See* Compl. ¶ 92. Ms. Briggs was so terrified that she would lose her home due to Defendants' enforcement of the Old Ordinance that she even refrained from calling the police when her former boyfriend brutally attacked and almost killed her in June 2012. *See* Compl. ¶¶ 93-100.

Defendants only relented in enforcing the Old Ordinance against Ms. Briggs when Plaintiff's counsel interceded. *See* Compl ¶¶ 116-21. Defendants' subsequent bait-and-switch in "repealing" the Old Ordinance and enacting the New Ordinance has only heightened Ms. Briggs' fear and reluctance to contact the police. *See* Compl. ¶¶ 123-28. The New Ordinance is substantially similar in all material respects to the Old Ordinance in its adverse impacts on Ms. Briggs and other victims of domestic violence in Norristown who call the police for protection. *See, e.g.,* Compl. ¶¶ 130, 136-38. Accordingly, Ms. Briggs continues to fear that contacting the police for any reason will, once again, place her at risk of eviction. *See* Compl. ¶ 138; *White*,

-23-

227 F.3d at 1228-29, 1234 (holding that defendant state actors "[took] a course certain to chill the exercise of the plaintiffs' First Amendment right[]" to petition when they threatened "legal sanctions" and engaged in "other means of coercion, persuasion, and intimidation" to prevent plaintiffs from exercising their First Amendment rights) (internal citation and quotations omitted).

This fear was further exacerbated when, shortly after the New Ordinance was enacted, Ms. Briggs learned that Norristown would be inspecting her home, without her consent, purportedly as part of Norristown's new program of "random inspections" of rental units throughout the borough.  *See* Compl. ¶ 140.  Even though Defendants have subsequently agreed not to inspect her home without her consent, *see* Compl. ¶ 143, and even though Ms. Briggs has moved to a new rental property in Norristown, *see* Compl. ¶ 144, Defendants have not advised Ms. Briggs or her landlord that Defendants consider the New Ordinance to be invalid, illegal or that it will not be applied against them.  *See* Compl. ¶ 147.  Thus, Ms. Briggs continues to fear that contacting the police for any reason may place her at risk of losing her home.  *See* Compl. ¶ 146.

Accordingly, Defendants' threatened enforcement of the New Ordinance against Ms. Briggs's landlord continues to cause an undue chilling effect on Ms. Briggs' First Amendment right to seek the assistance of law enforcement.  *See* Compl. ¶ 148.

### (c)    The New Ordinance Cannot Withstand Strict Scrutiny.

Enforcement of the New Ordinance infringes on Ms. Briggs' fundamental First Amendment right to petition and, thus, is subject to strict scrutiny review.  *See, e.g., Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 546 (1963) ("[I]t is an essential prerequisite to the validity of an investigation which intrudes into the area of constitutionally protected rights of speech, press, association and petition that the State convincingly show a substantial relation

-24-

between the information sought and a subject of overriding and compelling state interest");
*American Civil Liberties Union v. N.J. Election Law Enforcement Comm'n*, 509 F. Supp. 1123, 1128-1129 (D.N.J. 1981) ("Freedom of speech and the right to petition for the redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights. . . . Any infringement on such rights must be based on a compelling governmental interest; even then, the state must demonstrate that it has chosen the least restrictive means to further such an interest.") (internal citations and quotation marks omitted); *see also Meyer v. Grant*, 486 U.S. 414, 424-25 (1988) (holding that the burden a State must overcome when infringing First Amendment rights is "well-nigh insurmountable").

Defendants cannot show that the New Ordinance serves a "compelling governmental interest" or that it is the "least restrictive means to further such an interest." *See, e.g., American Civil Liberties Union*, 509 F. Supp. at 1128-1129 (discussing standard of review for state action that infringes on the "fundamental" right to petition); *White*, 227 F.3d at 1233 (holding that courts should apply a "heightened level of protection" to prevent chilling of First Amendment rights, including the right to petition) (internal citations omitted); *Circle Sch. v. Phillips*, 270 F. Supp. 2d 616, 626 (E.D. Pa. 2003) (holding that although the Commonwealth had a compelling interest, its actions unduly chilled fundamental First Amendment rights and could not survive strict scrutiny because it did not take "the least restrictive means of advancing this interest").

### (i)    The New Ordinance Does Not Serve a Compelling Government Interest

Defendants cannot show that the New Ordinance is necessary to achieve any compelling government interest. Defendants' purported interests in enacting the New Ordinance – *i.e.,* reducing the burden and expense on the Norristown police department in responding to

-25-

calls regarding incidents of "disorderly behavior," including domestic violence, and encouraging its citizens to curb such "disorderly behavior" on their own – are neither compelling, nor even served at all by the New Ordinance.  *See* Compl. ¶ 128 (citing Ordinance No. 12-15, Exhibit J to the Compl. (enacting an ordinance to respond to "the Norristown Police Department['s] . . . [statement] . . . that the majority of the calls to which it responds involve disorderly behavior by tenants")).

Defendants' supposed interest in minimizing the administrative burden and expense on the Norristown police department is grossly outweighed by the core societal interests in protecting the physical safety of domestic violence victims in Norristown and in preserving their fundamental First Amendment freedoms.  *See, e.g., United States v. Lippman*, 369 F.3d 1039, 1044 (8th Cir. 2004) (holding that protecting the physical safety of domestic violence victims is a compelling government interest recognized by Congress and multiple Courts of Appeals), *cert. denied*, 543 U.S. 1080 (2005); *Meyer v. Bd. of County Comm'rs*, 482 F.3d at 1243 (holding that reporting incidents of domestic violence was "one of the most basic" exercises of the First Amendment right to petition); *Guthrie v. Bradley*, Civ. Action No. 06-0619, 2008 U.S. Dist. LEXIS 72027, at *16-22 (W.D. Pa. Sept. 15, 2008) (holding that plaintiff's right to engage in First Amendment activity was more compelling than defendant township's desire to "promote efficient operation of the Township").

Far from reducing incidents of domestic violence or other "disorderly behavior," the New Ordinance (like its predecessor) discourages citizens of Norristown from reporting such criminal activity, potentially even when it escalates to life-threatening levels, as was the case when Ms. Briggs was brutally attacked and almost killed by her former boyfriend.  *See* Compl. ¶¶ 95-101.  As demonstrated in the case of Ms. Briggs, the New Ordinance (like its predecessor)

strips victims of domestic violence of police protection, silences them from reporting acts of violence against them, and emboldens their abusers to perpetrate acts of violence in the home. *See* Compl. ¶¶ 43, 136.  Ironically, the New Ordinance, thus, actually encourages a greater incidence of domestic violence in Norristown.

The New Ordinance also exacerbates the preexisting challenges that victims of domestic violence face in accessing housing and, thus, contradicts Norristown's (and the federal government's) own legitimate interest in reducing homelessness and incidents of domestic violence within the borough.  *See* Compl. ¶¶ 43-45.  Accordingly, Defendants cannot show a logically consistent government interest, let alone a compelling one.

### (ii)    The New Ordinance Is Not Narrowly Tailored to Achieve Any Purported Government Interest.

The New Ordinance is also unduly restrictive of Ms. Briggs' First Amendment rights.  *See, e.g., Shelton v. Tucker*, 364 U.S. 479, 488-89 (1960) (citing cases in which the Supreme Court has acknowledged the presence of a legitimate state interest, yet held that the means for achieving the interest were too "drastic," and explaining:  "Mere legislative preferences or beliefs respecting matters of public convenience . . . [are] insufficient to justify . . . infring[ing] . . .  protected freedom[s]."); *White*, 227  F.3d at 1237 ("It is axiomatic that when the actions of government officials so directly affect citizens' First Amendment rights, the officials have a duty to take the least intrusive measures necessary to perform their assigned functions.").

Under the New Ordinance, Defendants have sacrificed Ms. Briggs' and other tenants' First Amendment right to petition in the mere hope that it will decrease "disorderly behavior" in Norristown and potentially reduce the burden and expense on the Norristown police department.  *See, e.g., Denver Area Educ. Telcoms. Consortium v. FCC*, 518 U.S. 727, 760

-27-

(1996) (holding that statute was "overly restrictive" when it "sacrific[ed]" important First Amendment interests for too speculative a gain") (internal citations and quotation marks omitted).  Yet, by robbing such tenants of their First Amendment rights to seek police assistance, the New Ordinance perversely encourages greater and more severe incidents of domestic violence, "disorderly behavior," and other criminal activity and, thus, only serves to increase the ultimate draw on police resources. *See Guthrie*, 2008 U.S. Dist. LEXIS 72027, at *16-22 (condemning an official policy of a township that sacrificed plaintiff's freedom of speech for the township's desire for administrative efficiency).

Nothing in the New Ordinance protects Ms. Briggs and other tenants (or their landlords) when they exercise their First Amendment right to petition by calling the police to respond to incidents of domestic violence.  Although the New Ordinance (like its predecessor) purports to provide an exception for calls to the police seeking "emergency assistance," it is clear from Defendants' prior enforcement of the Old Ordinance that this supposed exception is devoid of meaning. *See* Compl. ¶¶ 40-41 (describing the emptiness of this exception).

Defendants may find that having to respond to calls to Ms. Briggs' home to protect her from domestic violence is burdensome or annoying.  Defendants may even believe that restricting its citizens' calls for police assistance will help conserve police resources or will appeal to some public sentiment.  But these supposed interests simply do not justify either restricting Ms. Briggs' right to contact the police or penalizing victims of domestic violence for exercising their First Amendment rights. *Cf. Commonwealth of Pa. v. Pappert*, No. 1202 WDA 2008, slip op. at 5 (Pa. Super. Ct. Apr. 6, 2010) (reversing conviction under Pennsylvania harassment law because appellant's frequent correspondence to borough to stop pollution from nearby factory was protected petitioning activity) (attached as Exhibit 1 to this Memorandum of

Law); *Curry v. State*, 811 So. 2d 736, 743 (Fla. Dist. Ct. App. 2002) (holding that despite the defendant's annoying behavior and the State's interest in curtailing this behavior, "submission of complaints to . . . a police department constitutes petitioning activity protected by the petition clause").

      The New Ordinance unconstitutionally chills Ms. Briggs' right to petition under the First Amendment and withers under strict scrutiny review. Thus, Ms. Briggs is likely to prevail on the merits of her First Amendment claim.

      **B.**    **Ms. Briggs' First Amendment Rights Will Be Irreparably Harmed Absent Injunctive Relief.**

      Unless Defendants are enjoined from enforcing the New Ordinance, Ms. Briggs will be irreparably harmed, because the threat of its enforcement against her landlord, with the inevitable impact on her, continues to chill her First Amendment right to seek police protection. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").

      Although Defendants initially agreed to cease enforcement of the Old Ordinance against Ms. Briggs and her former landlord and subsequently "repealed" the Old Ordinance, *see* Compl. ¶ 120, Defendants refused to enter into a settlement agreement, *see* Compl. ¶ 122, and have made no promises not to enforce the New Ordinance (which is virtually identical in all material respects to the Old Ordinance) against Ms. Briggs and her landlord, *see* Compl. ¶¶ 130, 137. The ongoing threat of enforcement of the New Ordinance against Ms. Briggs and her current landlord thus continues to chill her First Amendment rights. *See, e.g., Presbytery of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir. 1994) (holding that "the threat of prosecution [of a law that infringed on a plaintiff's First Amendment rights was] real and substantial" when the state had previously "forsworn prosecution of [the plaintiff] in his

clerical role" but had subsequently "refused to forswear his prosecution if he were to step off the pulpit and engage in the activities he allege[d] his [F]irst [A]mendment right . . . protect[ed]") (internal citations and quotations marks omitted); *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997) (instructing a district court to enjoin a local government if there was a concern that the local government's actions constituted an "ongoing and . . . 'real or immediate' threat" to the exercise of the plaintiff's right to petition the government); *see also White*, 227 F.3d at 1233 (condemning state actors for chilling the plaintiffs' right to petition by informally threatening legal sanctions).

Effectively stripped of her ability to contact the police for protection, Ms. Briggs also faces a high likelihood of suffering further physical abuse at the hands of Wilbert (when he is released from prison), another companion, or even a stranger. *See, e.g., Builes v. Nye*, 239 F. Supp. 2d 518, 526 (M.D. Pa. 2003) (granting injunction because, absent injunctive relief, there was a high risk that petitioner would be tortured and killed). Moreover, Ms. Briggs would be irreparably harmed if the New Ordinance were enforced against her landlord and she were consequently evicted. *See, e.g., Oxford House-Evergreen v. Plainfield*, 769 F. Supp. 1329, 1345 (D.N.J. 1991) (holding plaintiffs would be irreparably harm if evicted); *Tenants for Justice v. Hills*, 413 F. Supp. 389, 393 (E.D. Pa. 1975) (same).

Ms. Briggs continues to fear that she and her three year old daughter may lose their home if they contact the police for any reason, even if she calls the police to protect their physical safety. Thus, this Court should enjoin enforcement of the New Ordinance to prevent further injury to Ms. Briggs' First Amendment rights and physical safety.

**C.**     **Granting a Preliminary Injunction Against Enforcement of the New Ordinance Will Not Result in Any Harm to Defendants.**

Defendants will not suffer any meaningful harm if a preliminary injunction is granted.  *See, e.g., Oxford House-Evergreen*, 769 F. Supp. at 1345 (holding that despite defendants' concerns with curbing "disruptive behavior," the harm was greater to plaintiffs, who would lose their "house and . . . supportive and stable living environment" if defendants' ordinance were enforced).  If the preliminary injunction is granted, Defendants will, at most, be required to respond to more calls from endangered or concerned Norristown residents than they would prefer.

Balancing the equities and potential harms to the parties, the scale tips decidedly in favor of granting a preliminary injunction against enforcement of the New Ordinance.

**D.**     **Granting a Preliminary Injunction Against Enforcement of the New Ordinance Is in the Public Interest.**

Enjoining the enforcement of the New Ordinance will undoubtedly serve the public interest.  Among other things, it will free Ms. Briggs and other tenants in Norristown to speak up and exercise their First Amendment right to report incidents of domestic violence, thereby reducing the incidence of domestic violence, enhancing the safety of domestic violence victims, and decreasing homelessness.  *See Forro Precision, Inc.*, 673 F.2d at 1060 (holding that reporting to law enforcement was in the public interest because "it would be difficult indeed for law enforcement authorities to discharge their duties if citizens were in any way discouraged from providing information"); *Mich. Chamber of Commerce v. Land*, 725 F. Supp. 2d 665, 698 (W.D. Mich. 2010) ("the public interest always strongly favors the vindication of constitutional rights and the invalidation of any state action which infringes on those rights or chills their confident and unfettered exercise"); *In re Miles*, Chap. 13 Bankr. No. 90-12090S,

1992 Bankr. LEXIS 187, at *4 (E.D. Pa. 1992) (noting that courts should be cognizant of the public's interest in preventing homelessness).

Failure to enjoin the New Ordinance would send a dangerous message to tenants in Norristown:  keep incidents of domestic violence secret or risk eviction.  Ms. Briggs is but one example of a domestic violence victim who was subjected to brutal, near-fatal physical abuse, but who was forced to choose not to call the police out of fear that it could lead to her eviction. The New Ordinance should be enjoined before the next victim of domestic violence in Norristown is brutally attacked and refuses to call the police for fear of losing her home.

## IV.    CONCLUSION

For the foregoing reasons, Ms. Briggs respectfully requests that the Court issue a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure prohibiting Defendants from enforcing the New Ordinance or its predecessor against landlords or their tenants for any alleged "disorderly behavior" at rental properties in Norristown or from requiring their employees to do so, and from deeming any calls for police assistance to tenants' homes as a "strike" under the New Ordinance.

Dated:  April 25, 2013                                Respectfully submitted,

/s/ Sara J. Rose                                      /s/ Peter M. Smith
Witold J. Walczak (PA 62976)                          M. Duncan Grant (PA 21726)
Sara J. Rose (PA 204936)                              Peter M. Smith (PA 93630)
American Civil Liberties Foundation                   Matthew E. Levine (PA 309419)
of Pennsylvania                                       T. Stephen Jenkins (PA 311104)
313 Atwood Street                                     PEPPER HAMILTON LLP
Pittsburgh, PA  15213                                 3000 Two Logan Square
412.681-7864 (telephone)                              Eighteenth & Arch Streets
412.681.8707 (facsimile)                              Philadelphia, PA  19103-2799
vwalczak@aclupa.org                                   215.981.4000 (telephone)
srose@aclupa.org                                      215.981.4750 (facsimile)
                                                      grantm@pepperlaw.com
/s/ Sandra S. Park                                    smithpm@pepperlaw.com

Sandra S. Park
Lenora M. Lapidus
American Civil Liberties Union
Women's Rights Project
125 Broad St. 18th Fl.
New York, NY 10004
212.519.7871 (telephone)
212.549.2580 (facsimile)
spark@aclu.org
llapidus@aclu.org

levinem@pepperlaw.com
jenkinst@pepperlaw.com

*Attorneys for Plaintiff Lakisha Briggs*

## <u>CERTIFICATE OF SERVICE</u>

I, Peter M. Smith, hereby certify that on April 25, 2013 a true and correct copy of the foregoing Motion for Preliminary Injunction and supporting Memorandum of Law were filed via ECF and served via email upon the following:

David J. Sander, Esq.
Friedman, Schuman, Applebaum, Nemeroff &
McCaffery, P.C.
101 Greenwood Avenue, 5th Floor
Jenkintown, PA 19046
Direct 215-690-3828
Fax 215-635-7212
dsander@fsalaw.com


/s/ Peter M. Smith
Peter M. Smith

# Exhibit 1

J. A17005/09

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MARSHALL L. PAPPERT, | : | |
| | : | |
| Appellant | : | No. 1202 WDA 2008 |

Appeal from the Judgment of Sentence July 16, 2008,
Court of Common Pleas, Allegheny County,
Criminal Division at No. CP-02-SA-0000711-2008

BEFORE:  MUSMANNO, DONOHUE and SHOGAN, JJ.

MEMORANDUM:                    FILED:  April 6, 2010

Marshall L. Pappert ("Pappert") appeals from the judgment of sentence entered following his conviction of harassment pursuant to 18 Pa.C.S.A. § 2709(a)(3).  Following our review, we reverse.

At the time of the events underlying this appeal, Pappert had been living at 145 Union Street in Bridgeville, Allegheny County for more than 50 years.  Located across the street from Pappert's residence is the fabricating plant of Silhol Builders Supply Company ("Silhol"), a company that manufactures concrete.  In June 2006, Pappert noticed that the Silhol plant was emitting a fine silicate dust that coated the road and began to settle in Pappert's home and the homes of Pappert's neighbors.  At some point thereafter, Pappert began to suffer physical maladies including lesions in his throat, the growth of a cyst on the back of his neck and chemical burns.  A

J. A17005/09

number of Pappert's neighbors on Union Street suffered the same symptoms. In addition, the Silhol plant was open and very active at night, causing what Pappert considered to be an excessive amount of noise.

In an effort to remedy both Silhol's particulate and noise pollution, Pappert began contacting local government officials. In May 2007, Pappert began writing letters to the mayor of Bridgeville, members of the borough council and the borough manager, Lori Collins ("Collins"). Pappert and Collins initially worked together to ameliorate Pappert's concerns regarding the silicate dust. When approximately four months elapsed without any action by officials of Bridgeville, Pappert contacted Collins, who then informed him that the Allegheny County Department of Health would be handing the matter. On October 28, 2007, Pappert called the Bridgeville Borough office and left three voicemail messages in which he complained about Collins' failure to help resolve the issues he was facing.

On October 29, 2007 Collins reported Pappert's voicemail messages to the chief of police, Edward Bogats, Jr. ("Chief Bogats"). On October 31, 2007, Chief Bogats issued a citation charging Pappert with harassment of Collins. Specifically, the citation stated that "[Pappert] has continued with a course of conduct by writing derogatory letters, making false accusations and leaving three disturbing voice messages on the Boro's voice mail system causing alarm and fear with the Boro Mgr." Non-Traffic Citation, 10/31/07.

J. A17005/09

On December 12, 2007, a hearing commenced before the district magistrate, during which the parties agreed to continue the case for 90 days, during which time Pappert was to have no contact with any employee of Bridgeville Borough regarding his problems with Silhol.    If Pappert refrained from such contact for the 90-day period, the citation would be dismissed. Pappert did not abide by these terms, as he continued to mail letters to Bridgeville Borough employees regarding the pollution emitted by Silhol.  On March 13, 2008 the district magistrate imposed sentence in the form of a fine of $171.50.

Pappert subsequently appealed to the Allegheny County Court of Common Pleas.  A hearing was held on July 16, 2008, at which Chief Bogats, Collins, and Pappert testified.  At the conclusion of the hearing the trial court found Pappert guilty of harassment and imposed as sentence a fine of $300 plus costs.    Pappert timely appealed this determination, and he now presents the following issues for our review:

> 1.    Whether the evidence was sufficient as a matter of law to prove that the speech and conduct for which Pappert was charged, namely contacting a public official on a matter of public concern, can be deemed to serve no legitimate purpose and this be criminally proscribed and punishable by potential imprisonment and fine without violating the First Amendment to the U.S. Constitution?

> 2.    Whether the evidence was sufficient as a matter of law to prove that Pappert possessed the requisite specific *mens rea*, namely an 'intent to harass, annoy or alarm another,' when competent

J. A17005/09

> evidence was introduced to demonstrate that Pappert's communications were directed to a public official on a matter of public concern, and thus protected by the First Amendment to the U.S. Constitution?

Appellant's Brief at 4.

Both of these issues challenge the sufficiency of the evidence supporting Pappert's conviction. When reviewing a challenge to the sufficiency of the evidence, our standard of review requires us to examine the evidence admitted at the hearing, together with any reasonable inferences drawn therefrom, in the light most favorable to the party whose position is bolstered by the trial court's findings. ***Commonwealth v. Henkel***, 938 A.2d 433, 438 (Pa. Super. 2007). Our scope of review requires us to examine all of the evidence presented, and when exercising this scope of review we must be aware that the finder of fact is free to believe all, part, or none of the evidence presented in judging the credibility of the witnesses and the weight to be afforded the evidence produced. ***Id.***

Pappert was convicted of harassment under § 2709(a)(3), which provides,

> **§ 2709. Harassment**
>
> (a) Offense defined.--A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
>
> ***
>
> (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]

- 4 -

J. A17005/09

18 Pa.C.S.A. § 2709(a)(3).

Pappert argues that the evidence is insufficient to establish that his actions did not serve a legitimate purpose or that he intended to harass, annoy or alarm Collins.    Appellants' Brief at 11, 15.  In making this argument, Pappert asserts that his communications to Collins are constitutionally-protected speech, in that Pappert was simply exercising his right to petition to government for redress of grievances.  **Id.** at 12.  For the following reasons, we agree.

Article 1 of the Pennsylvania Constitution contains the declaration of rights guaranteed to the citizens of the Commonwealth.    Of relevance, Section 20 provides,

### § 20. Right of petition

The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance.

PA. CONST. ART. 1, § 20.  Furthermore, Article 1 provides that in order "[t]o guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate." **Id.** at § 25. Discussing the sacrosanct nature of the rights provided for in Article 1, our Supreme Court has held that they "cannot be lawfully … infringed, even momentarily, by individuals, any more than by the state itself." **Spayd v.**

- 5 -

J. A17005/09

*Ringing Rock Lodge No. 665*, 270 Pa. 67, 69 113 A. 70, 72 (1921).  The

Court continued, discussing the right to petition specifically:

> Our state Constitution, by various sections of
> [A]rticle 1, provides that all men 'have certain
> inherent and indefeasible rights,' among others to
> address by petition those invested with the powers
> of government, and that this 'shall forever remain
> inviolate.'
>
> The right [to petition] is a fundamental one,
> expressly recognized in the organic law of our state
> as belonging to 'citizens.' … The Constitution does
> not confer the right, but guarantees its free exercise,
> without let or hindrance from those in authority, at
> all times, under any and all circumstances; and
> when this is kept in view, it is apparent that such a
> prerogative can neither be denied by others nor
> surrendered by the citizen himself.
>
> Chief Justice Wallace, in **United States v.
> Cruikshank**, speaking of the closely related privilege
> of the people to assemble for lawful purposes, said:
> 'The right, with the obligation on the part of the
> states to afford it protection, existed long before the
> adoption of the [federal] Constitution; in fact, it is,
> and always has been, one of the attributes of
> citizenship under a free government.'
>
> This applies equally to the right of petition.

*Id.* at 70-71, 72 (citations omitted).

The evidence of record reveals that when undertaking the actions at

issue, Pappert was seeking to remedy the harm being caused by Silhol.  In

May 2007, Pappert began writing letters to various Bridgeville Borough

J. A17005/09

officials including Collins, the borough manager. N.T., 7/16/08, at 10, 40.[1] In all of these letters, Pappert complained about Silhol's pollution; specifically, the silicate dust that had been coating Union Street and finding its way into the residences. *Id.* Pappert believed that this dust was causing respiratory health problems in him and the other residents of his neighborhood. *Id.* at 46.[2]

The evidence further establishes that the three voicemail messages referenced in the Citation were left by Pappert on the same night and in immediate succession. *Id.* at 12. The recording mechanism had a time limit for messages of two minutes, and once Pappert began to leave his message, the machine cut him off twice when he reached the two-minute mark. *Id.* at 11. Thus, when cut off, Pappert called back twice to finish his message. *Id.* at 12. Pappert left this message on the Borough's voicemail system, and he did not use profanity or threaten to harm Collins. *Id.* at 12-13. Officer Bogats testified that in the message Pappert complains about the Silhol pollution and calls for Collins' resignation as Borough Manager because she was not doing her job. *Id.* at 18-19.

---

[1] We note that evidence regarding the fact that there were other recipients of Pappert's letters or the number of letters those other recipients received are not relevant to the case before us, as the Citation at issue specifically charged Pappert with regard to his contacts with Collins alone. **See** Non-Traffic Citation, 10/31/07.

[2] While Officer Bogats testified that these letters became "more aggressive in nature," N.T., 7/16/08, at 46, there is no testimony as to what Officer Bogats meant by "aggressive", and none of these letters were read into the record or offered into evidence.

J. A17005/09

Collins testified that as borough manager, it is her job to see that all borough ordinances, including its pollution ordinances, are enforced. *Id.* at 30. Pappert first contacted Collins on May 8, 2007 to complain about the pollution from Silhol. *Id.* at 24. Collins initially assisted Pappert with his grievance, telling Pappert that the Borough would need samples of the silicate dust to address his complaint. *Id.* at 33. According to Collins, Pappert was not pleased when she told him that the Allegheny County Health Department was going to take over the matter, and when the problem was not immediately resolved, Pappert began to blame Collins for the fact that it had not yet been rectified. *Id.* at 24-25.[3]

From this evidence we conclude that Pappert's letters and voicemail messages were made in an effort to get the government's help in remedying the problems being caused by Silhol. In reaching this determination, we note that Collins initially helped Pappert in this quest, thus making his continued reliance on her, and his continued efforts to speak with her about the matter, as gruff as they might have been, an attempt at seeking redress. Accordingly, we conclude that the conduct at issue (specifically, the letters to Collins and the voicemail messages) was an exercise by Pappert of his "inviolate" right to petition the government, which "cannot be lawfully … infringed, even momentarily[.]" *Spayd,* 270 Pa. at 69, 113 A. at 72. That

---

[3] Collins also testified that Pappert not only sent her letters regarding his problem with Silhol, but also accusing her of stealing money from the Borough and not properly doing her job. N.T., 7/16/08, at 26.

J. A17005/09

Pappert employed language (such as calling for Collins' resignation for not remedying the problem) or tone that did not agree with Collins cannot negate Pappert's right to exercise this Constitutional right.   The statute under which Pappert was charged and convicted provides that it "shall not apply to … any constitutionally protected activity."   18 Pa.C.S.A. § 2709(e). As such, Pappert's conviction of harassment under this provision for the activity at issue cannot stand.

Judgment of sentence reversed.

Judgment Entered:

*Eleanor R. Valecko*

Deputy Prothonotary

DATE:  April 6, 2010