## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAKISHA BRIGGS** | : | **Civil Action** |
| | : | |
| **Plaintiff,** | : | **No. 13-CV-2191** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF NORRISTOWN and DAVID R.** | : | **Jury Trial Demanded** |
| **FORREST, ROBERT H. GLISSON, RUSSELL** | : | |
| **J. BONO, WILLIE G. RICHET and JOSEPH** | : | |
| **E. JANUZELLI, in their individual and official** | : | |
| **capacities** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

**AND NOW,** this          day of                    , 2013, upon consideration of Plaintiff's

Motion for  Preliminary Injunction seeking to enjoin enforcement of Norristown Municipal

Council Ordinance 12-15 of 2012, or former Section 245-3 of the Norristown Municipal Code

and Defendants' response thereto, it is hereby **ORDERED** and **DECREED** that:  Plaintiff's

Motion is  denied.

_____

**Robreno, Eduardo C.              J.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAKISHA BRIGGS** | : | **Civil Action** |
| | : | |
| **Plaintiff,** | : | **No. 13-CV-2191** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF NORRISTOWN and DAVID R.** | : | **Jury Trial Demanded** |
| **FORREST, ROBERT H. GLISSON, RUSSELL** | : | |
| **J. BONO, WILLIE G. RICHET and JOSEPH** | : | |
| **E. JANUZELLI, in their individual and official** | : | |
| **capacities** | : | |
| | : | |
| **Defendants** | : | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTON FOR PRELIMINARY INJUNCTION

Defendants, by and through their counsel, Robert P. DiDomenicis, Esquire, hereby respond to Plaintiff's Motion for the Issuance of a Preliminary Injunction and state the following:

1.      For the reasons stated more fully in the Memorandum of Law which accompanies this response to Plaintiff's Motion for Injunctive Relief and which is incorporated herein by reference, Plaintiff has failed to establish the necessary elements which would entitle Plaintiff to the issuance of a Preliminary Injunction and, accordingly, Plaintiff's Motion for Preliminary Injunction should be denied.

WHEREFORE, Defendants, Borough of Norristown, David R Forrest, Robert H. Glisson, Russell J. Bono, Willie G. Richet and Joseph E. Januzelli respectfully request that the Court issue an Order denying  Plaintiff's Motion for Injunctive Relief.

Respectfully submitted,

**HOLSTEN & ASSOCIATES**

**BY:**    **RPD2724**
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
**ROBERT P. DiDOMENICIS, ESQUIRE**
Holsten & Associates
1 S. Olive Street
Media, PA 19063
(610) 566-8800
Attorney for Defendants

## CERTIFICATE OF SERVICE

    I, Robert P. DiDomenicis, Esquire, counsel for Defendants Borough of Norristown, David R.

Forrest, Robert H. Glisson, Russell J. Bono, Willie G. Richet and Joseph E. Januzelli state that a true

and correct copy of the within Defendants Response to Plaintiff's Motion for Preliminary Injunction

and Memorandum of Law has been served upon the following individuals as counsel of record via

ECF this 13th day of May, 2013

        Witold J. Walczak, Esquire
        ACLU of Pennsylvania
        313 Atwood Street
        Pittsburgh, PA  15213

        Peter M. Smith, Esquire
        M. Duncan Grant, Esquire
        T. Stephen Jenkins, Esquire
        Pepper Hamilton LLP
        3000  Two Logan Square
        Eighteenth & Arch Streets
        Philadelphia, PA  19103-2799

        Respectfully submitted,
        **HOLSTEN & ASSOCIATES**

        **RPD2724**
        **ROBERT P. DiDOMENICIS, ESQUIRE**
        **Attorney ID No. 30482**
        **One Olive Street**
        **Media, PA  19063**
        **(610) 627-2437**
        **Attorney for Defendants**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAKISHA BRIGGS** | : | **Civil Action** |
| | : | |
| **Plaintiff,** | : | **No. 13-CV-2191** |
| | : | |
| v. | : | |
| | : | |
| **BOROUGH OF NORRISTOWN and DAVID R.** | : | **Jury Trial Demanded** |
| **FORREST, ROBERT H. GLISSON, RUSSELL** | : | |
| **J. BONO, WILLIE G. RICHET and JOSEPH** | : | |
| **E. JANUZELLI, in their individual and official** | : | |
| **capacities** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### I.      INTRODUCTION AND FACTS

Defendants in the within action are the Municipality of Norristown (identified as the Borough of Norristown), its former Borough Administrator, David R. Forrest, its current interim Administrator, Robert H. Glisson, its former Police Chief, Russell J. Bono, its current interim Police Chief, Willie G. Richet and the Municipal Code Manager, Joseph E. Januzelli collectively, Defendants.

Plaintiff has asked this Court to issue a preliminary injunction to preclude the Defendants from enforcing certain provisions of its ordinance governing rental properties. The particular section of the ordinance to which Plaintiff objects is Section 245-3 which seeks to regulate disorderly behavior.

As Plaintiff points out in her Brief, the original Section 245-3 was rescinded by Norristown in November, 2012. In December, 2012, the Borough adopted a new Section 245-3 in order to remedy possible due process issues. (See Plaintiff's Exhibit H). The activity for which Plaintiff's

landlord had been cited had occurred under the old Section 245-3 between January, 2012 and May 2, 2012. (See Exhibits D-6, D-7 and D-8). Following the issuance of the Notice of Revocation, an administrative hearing took place which was attended by Plaintiff and her landlord. Following this administrative hearing, Norristown did not revoke the license of the landlord but, instead, provided Plaintiff with 30 days to obtain a Protection From Abuse Order against her daughter and her boyfriend. (See Exhibit D-9). Plaintiff failed to do this in a timely fashion and, in fact, did not seek Protection From Abuse Orders until on or about July 12, 2012. Thereafter, as a result of Plaintiff's failure to take advantage of this opportunity, the license of the landlord was revoked and eviction proceedings were started.

Conveniently missing from Plaintiff's set of Exhibits is an email from David Forrest to Plaintiff's landlord on September 6, 2012 advising her landlord that the Municipality reconsidered the situation and decided that it would not pursue it any further and that Ms. Briggs could stay in her home, and the landlord's license would be restored. (See Exhibit D-1 A). That same day, the license of the landlord was reactivated. (See Exhibit D-1 B). The municipality was not notified of Ms. Briggs' representation by counsel herein until a letter dated September 10, 2012 was forwarded to Norristown. (See Plaintiff's Exhibit F).

Subsequently, Norristown and counsel for Plaintiff reached a specific agreement in which Norristown agreed that it would cease any enforcement activities against Ms. Briggs noting that she is free to call the Norristown Borough Police Department without fear of eviction or risking any further strikes against her. Similarly, Norristown agreed to cease any enforcement activities against her landlord noting that his license had been restored in full. In addition, Norristown suspended any enforcement of the ordinance against other individuals, whether landlords or tenants, pending re-evaluation of the ordinance. Three other landlords who were affected by the ordinance were advised

2

accordingly.  (See Plaintiff's Exhibit G email from David J. Sander, Esquire to Peter M. Smith, Esquire).

The new Section 245-3 adopted in December, 2012 has not been enforced against Ms. Briggs or anyone else.

Although Ms. Briggs asserts that her First Amendment right to petition the government for redress of grievances has been violated, and that enforcement of the ordinance has had an undue chilling effect on her right to seek police assistance, the facts require a different conclusion.  In the first five months of 2012, there were ten police calls to Ms. Briggs' home.  Quite a few of these calls were due to arguments between Plaintiff and her adult daughter, as well as incidents with her boyfriend and an incident between her boyfriend and her daughter's boyfriend. (See the compilation of Police Reports and the Montgomery County Radio Room list attached hereto as D-5).  On January 20, 2012, Plaintiff's adult daughter broke a window in the house.  On February 4, 2012, police responded to two calls as a result of arguments between Plaintiff and her daughter.  Her daughter was cited for public drunkenness on one of these occasions.  On April 9, 2012, Plaintiff's boyfriend was cited for disorderly conduct, not because there was any evidence of violence toward Ms. Briggs, but because he was loud and argumentative at 2:30 in the morning and refused police order to quiet down. On April 15th, Plaintiff's boyfriend and the daughter's boyfriend were arrested following a particularly nasty fight. On May 2, 2012, Plaintiff was cited for disorderly conduct after have caused a disturbance in the alley at 2:45 a.m.  Apparently, this involved a fight with Mr. Bennett, her boyfriend, yet there was no evidence of injury to Plaintiff.  On April 15, 2012, police were called to the scene when neighbors reported three gun shots having been fired.  Although Plaintiff seems to assert that the only purpose of the ordinance is to decrease the burden and expense on the Norristown Police in having to respond to incidents of domestic violence or other disorderly behavior, this is

3

simply an oversimplification of the issue which fails to take into consideration the health, safety and welfare of all neighbors who live in proximity to a disorderly house. Everyone has the right to peaceful enjoyment of their property. The purpose of the ordinance is to make certain that those responsible for rental properties manage those properties in a manner which does not invade or otherwise infringe the rights of all Norristown residents.

Plaintiff argues that the ordinance does nothing to reduce incidents of domestic violence but, instead, encourages greater incidents of domestic violence. Such is not the case. Norristown Police Department aggressively enforces the criminal code relating to domestic violence incidents. Under 18 Pa.C.S. §2711(a), police officers are given the same right of arrest without a warrant as in a felony whenever probable cause exists for an assault against a family or household member even though the offense did not take place in the presence of the officer. This statute requires simply that the officer have some corroborating evidence of physical injury to the victim. This may be the officer's own observations or other corroborating evidence. General Order 2000-54 is the Norristown Police Department's policy on domestic violence. This was initially affective October 12, 1998 and reissued on March 13, 2000. (See Exhibit D-2). The stated goal of this policy is to reduce the incidents and severity of domestic violence and to ensure that law enforcement services are available to victims in such cases. The policy specifically provides that officers have the authority and responsibility to make arrests in accordance with established probable cause standards. (A2c). This 28-page policy specifically states in several sections that officers "shall arrest" and prosecute any person who has committed domestic violence as long as probable cause exists. (See B(1). See also B(3) reaffirming that a probable cause standard under 18 Pa.C.S. §2711 and §4 of said policy once again noting that the officer "shall arrest" the suspect upon probable cause. This policy even requires the officer to make an arrest when probable cause exists even if the victim opposes the

arrest. (See 7(a)). Lastly, C(3) states as follows:

> An arrest shall be made whenever there is probable cause to
> believe that there has been a violation of a PFA Order.  Probable
> cause may be established by the existence of the Order in a
> statement by the victim detailing any violation.  The fact that
> the violation did not occur in the presence of the police officer
> shall not preclude an arrest.

This policy details numerous rights available to domestic violence victims and the police assistance available to them.  Accordingly, when Plaintiff attempts to portray the actions of the law enforcement personnel of Norristown as not having the ability to make a "mandatory arrest" for a domestic violence crime, the Plaintiff is simply incorrect.  The Pennsylvania statute on domestic violence provides police with a clear probable cause standard and the police department's policy makes it mandatory that an officer make an arrest whenever probable cause exists.

Plaintiff references the May 23, 2012 hearing calling it a meeting and noting that there was a 30-day probationary period provided to Plaintiff's landlord.  Plaintiff fails to note, as clearly set forth in the letter from Mr. Forrest to Plaintiff's landlord, that Plaintiff was required and apparently agreed to seek a PFA against her daughter and her boyfriend.  Failure to properly characterize this hearing and Plaintiff's failure to advise this Court of the decision of Norristown on September 6, 2012 that it would not pursue any further action and that she could remain in the house fails to provide the Court with an accurate description of the events that took place prior to the issuance of the September 10, 2012 letter by Plaintiff's counsel.

A review of the provisions of Ordinance 245-3 as adopted in December, 2012 provides no basis to question whether Plaintiff's First Amendment right to petition for redress of grievances has been violated.

Plaintiff takes issue with the fines imposed on landlords for disorderly behavior of tenants.

Plaintiff's characterization that the Chief of Police, in his sole discretion, decides what may be disorderly behavior, is completely inaccurate. The Chief of Police reviews reports and forwards them to the Borough Code Official. This official then issues citations and these citations, just like any summary citation, will be heard by a Magisterial District Judge. Any landlord who is cited has the same rights of anyone else to attend a hearing and appeal same to the Court of Common Pleas if aggrieved. Any attempt to portray the ordinance in any other fashion is factually incorrect. Moreover, it should not be lost on this Court that there is no landlord who is a Plaintiff in this action.

Plaintiff argues that the ordinance is overbroad and/or vague with respect to its description of disorderly behavior and claims that the emergency assistance exception is "hollow". Nothing can be further from the truth. The actual ordinance specifically describes the types of conduct which would constitute disorderly behavior, nor can it be expected that every possible scenario of disorderly behavior be listed. The emergency assistance exception has been applied in this case as Plaintiff's landlord was not cited for every incident where the police were called to her residence. Plaintiff takes great pains in asserting that the "new ordinance" greatly penalizes landlords, however, the due process provisions which were added to the ordinance clearly resolve that issue.

To the extent that Ms. Briggs asserts that she is in fear of contacting the police, Plaintiff has produced no evidence other than her subjective assertion of same. Plaintiff asserts that on December 7, 2012, her home was going to be inspected. This part of a program of "random inspections" of rental units throughout the Borough. However, it is hard to conceive how this could have caused any chilling affect on Plaintiff's First Amendment rights as it does not involve any petition to redress grievances. This issue was resolved between the Solicitor and Ms. Briggs' counsel and the house was not inspected.

Similarly, Plaintiff's concern in her stated reason for failing to call the police on April 5,

2013 when she heard gunshots in her neighborhood has no rational basis. Reporting gunshots in the neighborhood, bears absolutely no relationship to committing any of the violations set forth in Section 245-3 of the ordinance. The fact of the matter remains that Norristown halted any attempt to pursue its remedies under the old ordinance Section 245-3 on September 6, 2012 and had specifically advised Plaintiff that it would not pursue its remedies. Any alleged fear that Plaintiff has with calling the police is simply not rational or objectively credible.

## II.   ARGUMENT

A.   **Plaintiff has not met the standard to obtain a Preliminary Injunction.**

In Winter v. Natural Resources Defense Council, 55 U.S. 7(2008) the Supreme Court stated:

> A Plaintiff seeking a preliminary injunction must establish that he
> is likely to succeed on the merits, that he is likely to suffer irreparable
> harm in the absence of preliminary relief, that the balance of equities
> tips in his favor, and that an injunction is in the public interest.

Citing, Munaf v. Geren, 553 U.S. 674, 689-90 (2008); Amoco Production Company v. Gambell, 480 U.S. 531, 542 (1987); and Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982). The court specifically noted that a Plaintiff seeking preliminary relief in the nature of a preliminary injunction must demonstrate that irreparable harm is likely in the absence of an injunction. Id. 22 (citations omitted). The court noted that "a preliminary injunction is an extraordinary remedy never awarded as of right". Id. 24. Citing Munaf at 689-90. "In exercising their sound discretion, the courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Romero-Barcelo, Id. 312.

Similarly, the harm must be "immediate irreparable injury, which is more than merely serious or substantial harm." ECRI v. McGraw-Hill Inc., 809 F.2d 223, 226 (3rd Cir. 1987). Moreover, the injury "cannot merely be possible, speculative or remote." Dice v. Clinicorp, Inc., 887 F.Supp. 803,

809 (W.D. Pa. 1995). Stated another way, an injunction is not to be issued "simply to eliminate the possibility of a remote future injury…" Acierno v. New Castle County, 40 F.3d 645, 655 (3rd Cir. 1994). In essence, Plaintiff must prove that the "preliminary injunction must be the only way of protecting the Plaintiff from harm." Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3rd Cir. 1992).

For the reasons set forth more fully herein, Plaintiff cannot establish the elements necessary to obtain a preliminary injunction to enjoin the enforcement of Ordinance No. 12-15 of 2012 and/or Section 245-3 of same.

As noted above, the Plaintiff was never evicted from her home and, in fact, the Borough of Norristown suspended all action to enforce any eviction or actions against the landlord prior to receiving the letter from Plaintiff's counsel in September, 2012. Furthermore, the revised Ordinance which was adopted in December of 2012 has never been enforced against any landlord. The provisions of the "old Ordinance", having been rescinded in November, 2012, are not at issue.

**Plaintiff will not be irreparably harmed.**

Plaintiff cannot meet the necessary element to establish that she will be irreparably harmed if an injunction is not issued. Plaintiff is no longer under threat of enforcement and the ordinance itself provides sufficient safeguards to protect Plaintiff and anyone else who may be a subject of domestic violence from having their First Amendment rights abridged. Although Plaintiff continues to make the argument that she is likely to refrain from calling the police when necessary, there is no rational basis or objective basis to accept such a claim under the provisions of this ordinance.

Plaintiff was not evicted form her home, Norristown stopped its pursuit of enforcement of the old ordinance and Plaintiff has not been cited since the adoption of the new ordinance.

8

Clearly, she will not suffer irreparable harm under these circumstances sufficient to enjoin the enforcement of this ordinance.

**A preliminary injunction will harm Norristown.**

It is not simply the concern of this ordinance that police will have to respond to more calls.  Common sense dictates that disorderly homes create problems for neighbors who live in the community and cannot peaceably enjoy their own  properties.  Common sense dictates that disorderly homes also present a danger to police officers.  Norristown, like many other communities, must have the ability, under threat of enforcement, to reign in disorderly homes to maintain the integrity of the community.  Plaintiff would like to argue that this is simply a dollars and cents argument, but it goes well beyond that and all of the citizens of Norristown are entitled to live in a community free of disorderly homes to the extent that the municipality can do so.

**A preliminary injunction is not in the best interest of the public.**

The public interest will not be served by enjoining the enforcement of the new ordinance.  An individual cannot hide behind the shield of the First Amendment in order to commit crimes. Each of the types of proscribed conduct set forth in this new ordinance are directed to actual criminal activity and the ordinance has an appropriate exception for emergency assistance and domestic violence victims.  There is no rational basis for Plaintiff or any one similarly situated to fear calling the police when they are a victim of crime and Plaintiff's subjective fears alone cannot diminish the rights of the public in prohibiting the types of conduct proscribed in this ordinance.

Any individual in Plaintiff's shoes is protected not only by this ordinance but state law and the mandatory policies of the Norristown Police Department.  Accordingly, enjoining this ordinance would be harmful to the public interest.

B.       **Plaintiff does not have standing to challenge the Ordinance.**

The United States Supreme Court has ruled that a Plaintiff who seeks to establish standing must demonstrate: (1) that she has suffered an "injury in fact" that is a (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged action of the Defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); and Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 180-81 (2000). Here, the Plaintiff cannot establish that she has suffered an "injury in fact" in order to support an injunction to enjoin an enforcement of the Ordinance in question as she has never suffered an injury under the Ordinance adopted in December, 2012 and the prior Ordinance was rescinded in November, 2012. At this point, the injunction Plaintiff seeks is based on nothing more than subjective allegations that she may incur an injury at some point in the future and as such, it is clearly speculative.

Moreover, it cannot be reasonably stated that Plaintiff suffered an injury traceable to the Ordinance where Plaintiff was never evicted from her residence and, further, the element of causation between the disorderly behavior and her alleged injuries at the hands of her ex-lover are far too attenuated.

In order for Plaintiff to bring a pre-enforcement challenge against the "new Ordinance" she must assert an intention to engage in a course of conduct arguably "affected with a constitutional interest, but  proscribed by statute" and, further, that "there exists a credible threat of prosecution thereunder." Babbitt v. United Farm Workers, 442 U.S. 289, 298 (1979). Here, not only has Plaintiff not been evicted from her old residence, but she has not even been cited

10

under the new Ordinance at her new residence. In fact, Plaintiff has not been cited for the proscribed disorderly behavior since May, 2012. Her claims that the Ordinance chills her First Amendment right is also lacking. The Supreme Court has held that a Plaintiff cannot establish a "injury in fact" based upon "subjective apprehensions" that a Defendant might act unlawfully. City of Los Angeles v. Lyons, 461 U.S. 95, 107n.8 (1983). Accordingly, there must be an objectively credible threat of prosecution under the Ordinance for Plaintiff to have standing. Such is not the case in the matter before this Court. Clearly, any harm that Plaintiff has suffered is directly traceable to her prior lover, Mr. Bennett, and her adult daughter, not to any action or enforcement of Norristown's ordinances and Plaintiff's attempt to argue the chilling affect of this ordinance on her First Amendment rights is not realistic and, at best, subjective and speculative.

The mere fact that she lives in a rental property in Norristown and at some future time, she may violate the ordinance or that she may be cited for disorderly behavior is simply insufficient. For these reasons, Plaintiff does not have standing in this matter to challenge the constitutionality of the Ordinances of the Borough of Norristown.

C.      **The Plaintiff's claim is not ripe for determination.**

The focus of the ripeness analysis is to determine when a proper party may bring an action. Armstrong World Industries, Inc. v. Adams, 961 F.2d 405, 411, nn. 12-13 (3rd Cir. 1992). The Supreme Court has established a two-part test to determine whether a claim is ripe for adjudication. First, the Court must evaluate the fitness of the issues for judicial decision and, secondly, the hardship to the parties of withholding consideration by the Court. Abbott Labs v. Gardner, 387 U.S. 136, 149 (1967). Similarly, the Third Circuit has noted that the Courts should consider three factors. The Court should consider: "the adversity of the interests of the parties;" "the conclusiveness of the judicial judgment;" and " the practical help, or utility, of that

judgment." <u>Step-Saver Data Sys., Inc., v. Wyse Tech.</u>, 912 F.2d 643, 647 (3d Cir. 1990).

In the <u>Presbytery of New Jersey of the Orthodox Presbyterian Church v. Florio</u>, 40 F.3d 1454 (3rd Cir. 1994), the Court explained the application of the <u>Step-Saver</u> analysis. The Court noted that in order to have adversity of interest that the parties must be so situated to actually have adverse legal interests; there must be a substantial threat of real harm and that threat must be real and immediate throughout the course of the litigation; and, finally, where intervening events have removed the possibility of any harm the Court should not address a speculative controversy. Id. 1463.

Here, the old ordinance under which  Plaintiff was almost evicted from her residence has been rescinded.  Plaintiff was not evicted and remained in that residence until February, 2013. The new ordinance which was enacted in December, 2012 has never been applied  to the Plaintiff or her landlords.  Accordingly, Plaintiff fails to meet the test for ripeness established by the Supreme Court and the Third Circuit. At this point, the parties do not have adverse legal interest with respect to the application of the new ordinance, there is no substantial threat of real harm as Norristown has already advised Plaintiff that they will not enforce the ordinance against her and, in fact, the ordinance has not been enforced against the Plaintiff or either of her landlords and, finally, Plaintiff's arguments that the new ordinance has a chilling affect on her right to petition for redress of grievances,  is clearly speculative.  No incident has happened at Plaintiff's house that would be considered an incident of domestic violence since the summer of 2012, nor has Plaintiff pleaded that any such incident occurred. The Plaintiff's allegation that she heard gunshots in her neighborhood and was afraid to call the police is simply not objectively credible considering the application of the ordinance in question.  Accordingly, the constitutionality of the ordinance is not ripe for adjudication.

D.     **Plaintiff has not established that she has a First Amendment right to seek the assistance of police.**

Plaintiff reaches the conclusion that her First Amendment right to petition for redress of grievances includes the right to call 911 for police assistance.  It does not appear as though the United States Supreme Court or the United States Court of Appeals for the Third Circuit have directly addressed this issue.  Accordingly, we must look to other cases which may shed some light on this issue.

It has been held that the substantive due process clause of the Fourteenth Amendment does not provide a right to rescue services or an affirmative obligation on the state to provide the public with adequate emergency rescue services.  White v. City of Philadelphia, 118 F.Supp. 2d 564 (E.D.Pa. 2000) citing Regalbuto v. City of Philadelphia, 937 F.Supp. 374, 379 (E.D.Pa. 1995, aff'd 91 F.3d 125 (3rd Cir. 1996).  Accordingly, if the Constitution does not provide a right to rescue services the question then becomes whether or not the utilization of 911 to contact police can  constitute a petition to redress of grievances.  Clearly, any call to 911 by Ms. Briggs is not to address any grievance that she has with the government but, instead, to alert the police of criminal activity or some other emergency.  In denying a claim under the First Amendment right to petition, it has been held that no claim can arise for the failure of police to execute a private criminal Complaint.  Guarrasi v. Gibbons, 2008 WL 4601903 *9 (E.D.Pa.) citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) where the Supreme Court stated "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."

In Borough of Duryea v. Guarnieri, ____U.S. _____, 131 S. Ct. 2488, 2494 (2011), the Court stated:

> "The petition clause protects the right of individuals to appeal to
> courts and other forums established by the government for

resolution of legal disputes."

Here, Plaintiff's utilization of 911 to call the police does not fall within the ambit of the petition clause. In Borough of Duryea, supra., the Court was addressing a grievance filed by a public employee. The Court discussed at length the historical origins of the right to petition for redress of grievances. Throughout this discussion, it is clear that this right addresses the ability and opportunity of a citizen to complain of or about government action or inaction. These issues are not present in the matter before this Court. Here, Plaintiff's use of the 911 system to contact police is purely personal.

E. **The new ordinance does not present an undue chilling affect of Plaintiff's First Amendment rights.**

Plaintiff's argument that the ordinance section adopted in December, 2012 has a chilling effect on her First Amendment rights is without merit. Under the facts of this particular case, any action against Plaintiff's landlord was halted on September 6, 2012. Norristown advised Plaintiff's counsel subsequently that it would not pursue any action against the Plaintiff. Plaintiff has not alleged that she has had any further acts of disorderly behavior in her home that would fall within the confines of the ordinance, and the lone allegation that Plaintiff makes regarding gunshots in her neighborhood would clearly not fall within the confines of the ordinance. Accordingly, Plaintiff presents no objectively reasonable argument that her First Amendment rights have been chilled. In fact, the pursuit of this litigation itself establishes that Plaintiff's First Amendment right for petition to redress grievances has not been chilled. See Robinson v. Vaughn, 1993 WL 451495 *5 (E.D.Pa.).

The Plaintiff's allegations that she could not remove her abuser from her home because she feared calling the police when the old ordinance was in effect is also without merit. Plaintiff

always had the opportunity to seek a Protection From Abuse Order, which she did not do until July, 2012. The police always responded to her home when calls were made. Finally, most of the calls leading to the three strikes did not involve actions between Plaintiff and her boyfriend. Irrespective, the issues raised by Plaintiff about the old ordinance and the action taken there under is not determinative as those issues are moot and have been resolved by the rescission of the old ordinance.

F.    **The new Ordinance withstands Constitutional scrutiny.**

Section 245-3 as adopted in December, 2012 clearly withstands Constitutional scrutiny under any test employed. Ordinances and provisions similar to the one under review here have been upheld by both federal and state courts. In Bloomsburg Landlords Association, Inc. v. Town of Bloomsburg, 912 F.Supp. 790 (MD Pa. 1995), a very similar ordinance which was imposed on landlords to reduce and/or prevent misbehavior by college students was upheld when attacked on due process grounds as well as grounds that it was void as overly broad. Bloomsburg was affirmed by the Third Circuit. See 96 F.3d 1431 (3rd Cir., 1996). A review of the ordinance provisions in Bloomsburg show that the penalties were at least as severe, if not more so, against the landlords, and the conduct proscribed was far more general than the provisions in the ordinance adopted by Norristown.

As the Court in Bloomsburg noted, "federal courts sitting in judgment of a local municipality's legislative acts owe the municipality a degree of deference in its determination of local needs and preferences." Citing Minnesota v. Cloverleaf Creamery Co., 449 U.S. 456, 469 (1981). Id. 798. The court, treating the ordinance as similar to a zoning ordinance, held that local legislative acts enjoy a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." Id. 798 citing Hodel v. Indiana, 452 U.S. 314, 331-

15

32 (1981).  As the court noted in <u>Bloomsburg</u>, the ordinance in question was closely related and associated with the public health, safety and welfare and, in doing so, determined that the ordinance bore a relationship to  legitimate governmental interest.  Id. 798.

Similarly, the Commonwealth Court of Pennsylvania recently upheld a similar ordinance in the matter of <u>Berwick Area Landlord Association v. Berwick</u>, 48 A.3d 524 (Pa. Cmwlth., 2012).  In <u>Berwick</u>, the ordinance withstood a substantive due process attack placing duties on both landlords and occupants of rental properties.  The ordinance contained a three-strike violation section and provided penalties against landlords who failed to evict.  The court applied a rational basis review noting that an  ordinance seeking to ensure safe, healthful and habitable rental dwellings fell within the municipality's police powers and, as such, should be judged under a rational basis review.  Id. 537.

Here, there is no question that this ordinance bears a rational relationship to the health, safety and welfare of the public.  Norristown is very mindful of the implications of domestic violence.  (See Exhibit D-2).  Yet, protection and the right to peaceably enjoy one's property requires appropriate policing of rental properties which have historically presented an impediment to the peaceful enjoyment of property by other members of the public.

A review of the specific provisions of Section 245-3 relating to a disorderly household clearly establishes that the ordinance is narrowly tailored to provide for enforcement where certain crimes are committed.  Each of the categories of proscribed conduct set forth in I. (B). sets forth a type of conduct that would actually constitute a crime.  Clearly, this list cannot be all inclusive, but no one can argue that the crimes listed therein should not be tolerated by the citizens of Norristown.

Plaintiff takes direct aim at subsection (2)(e) that states "domestic disturbances that do

not require that a mandatory arrest be made". As noted earlier, the state statute for domestic violence provides police officers with probable cause to make an arrest where they have not witnessed an actual assault occur in a domestic violence situation, but yet have corroborating evidence. The Norristown Borough Police Department policies make it mandatory on the officers that they must arrest when probable cause exists. (D-2). This provides more than sufficient cushion to protect victims of domestic violence for being subjected to the potential ramifications of the ordinance. Moreover, subsection B(4) clearly carves out a well-defined exception where a household will not be subjected to a strike when calling for emergency assistance unless it is determined that one of the crimes set forth in subsection B(2) has been committed.

Applying the strict scrutiny standard as advanced by Plaintiff, it becomes clear that this ordinance meets the standard. There can be no question that a local government has a compelling governmental interest in allowing its citizens to peaceably enjoy their property, maintain safety for everyone including residents of rental housing and providing a layer of safety for police officers who must respond to disorderly houses whether they involve domestic violence or not. Norristown has specifically limited the types of conduct which would constitute a strike for disorderly behavior, and has provided an emergency assistance exception which, in itself, would eliminate the alleged chilling affect of which Plaintiff complains. The terms of the ordinance, coupled with the Police Department policy on domestic violence is there to ensure that a victim of domestic violence is protected to the extent that the law can do so. Accordingly, even under a strict scrutiny standard, this ordinance should survive.

Plaintiff argues that Norristown has not taken the least restrictive measure to accomplish its goal but, instead, has unduly restricted Plaintiff's First Amendment rights. A clear and simple

17

reading of the terms of the ordinance does not support Plaintiff's argument.  Not a single case addressing a similar ordinance is cited.  On the contrary, similar ordinances have been frequently upheld on other grounds.  The tool provided to Norristown by this ordinance helps to maintain peace and order by allowing a Plaintiff in the shoes of Ms. Briggs to seek necessary emergency assistance whenever she is a victim of domestic violence.  Most of the incidents involving the old ordinance and Ms. Briggs did not involve the typical domestic violence of which she complains she suffered at the hands of her boyfriend.  A review of the Police Reports establishes that most of the incidents involved loud arguments with her daughter, arguing with her boyfriend and a fight between her boyfriend and her daughter's boyfriend.

Nor is Commonwealth of Pennsylvania v. Pappert, No. 1202 WDA  2008, slip op. at 5 (Pa. Super. April 6, 2010) as cited by  Plaintiff have any bearing on the issue at hand.  In that case,  the Plaintiff was making phone calls to township officials because of toxins or pollutions spewed from a nearby factory and the court  reversed his conviction for harassment. It is clearly distinguishable from the case at hand.

The mere fact that the First Amendment is implicated does not necessarily give rise to a strict scrutiny standard.  Where there are lesser burdens on the exercise of First Amendment rights, there is less exacting review than strict scrutiny and the state's regulatory interest would generally be sufficient to justify reasonable restrictions.  Project Vote v. Kelly, 805 F.Supp. 2d 152, 172 (W.D. Pa. 2011); citing Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358 (1997).  As noted by the court, the Supreme Court regularly applies the cannon of "constitutional avoidance" when ambiguous federal statutes raise grave constitutional concerns.  Id. 167 citing United States v. X-Citement Video, Inc., 513 U.S. 64, 78 (1994).  Plaintiff's challenge to Section 245-3 presents a facial challenge to the "new ordinance" as it has never been applied to her and

must fail.

## III.    CONCLUSION

For the reasons stated more fully herein, Defendants respectfully request that the Court deny Plaintiff's Motion for a Preliminary Injunction.

Respectfully submitted,

**HOLSTEN & ASSOCIATES**

BY:    **RPD2724**
       _____
       **ROBERT P. DiDOMENICIS, ESQUIRE**
       Holsten & Associates
       1 S. Olive Street
       Media, PA 19063
       (610) 566-8800
       Attorney for Defendants